**In re Oliver NORTH, et al. (Richard L. Armitage Fee Application).**

**Division No. 86–6.**

United States Court of Appeals, District of Columbia Circuit.

(Division for the Purpose of Appointing Independent Counsels Ethics in Government Act of 1978, as Amended).

March 31, 1995.

Before: SENTELLE, Presiding, BUTZNER and FAY, Senior Circuit Judges.

### ORDER

PER CURIAM.

This matter coming to be heard and being heard before the Special Division of the Court, upon the application of Richard L. Armitage for reimbursement of attorneys' fees pursuant to section 593(f) of the Ethics in Government Act of 1978, as Amended, 28 U.S.C. § 591 *et seq.* (1988), and it appearing to the Court for the reasons set forth more fully in the opinion filed contemporaneously herewith, that the motion is well taken, it is hereby

ORDERED, ADJUDGED AND DE-
CREED that the United States reimburse
Richard L. Armitage for attorneys' fees he
incurred during the investigation of Indepen-
dent Counsel Lawrence E. Walsh in the
amount of $51,195.08, this 31st day of March,
1995.

Before: SENTELLE, Presiding,
BUTZNER and FAY, Senior Circuit Judges.

PER CURIAM:

Richard L. Armitage, former Assistant
Secretary of Defense, petitions this court
under section 593(f) of the Ethics in Govern-
ment Act of 1978, as amended, 28 U.S.C.
§ 591, et seq. ("the Act") for attorneys' fees
incurred by him during and as a result of the
investigation conducted by Independent
Counsel Lawrence E. Walsh. Under the
Act, Armitage is entitled to reimbursement if
he satisfies the provisions of section 593(f)(1)
which allows reimbursement to "an individual
who is the subject of an investigation con-
ducted by an independent counsel pursuant
to [the Act] ... if no indictment is brought
against such individual pursuant to that in-
vestigation" for "reasonable attorneys' fees
incurred ... during that investigation which
would not have been incurred but for the
requirements of [the Act]." After consider-
ing Armitage's petition, supporting authority,
exhibits, and memoranda, we find that he is
entitled to the fees and costs prayed.

## I. BACKGROUND

We will not repeat here the details of the
Walsh investigation. That long story is be-
yond the scope of this opinion. In addition
to volumes of media accounts, the facts are
generally collected in cases cited in *In re
North (Shultz Fee Application),* 8 F.3d 847,
849 (D.C.Cir.1993) (per curiam) ("*Shultz*").
Few additional facts are necessary to the
resolution of the present fee controversy as
most elements of Armitage's entitlement are
uncontested and substantially incontestable.
Briefly put, in September of 1991 the Office
of the Independent Counsel ("OIC") in-
formed Armitage that he was a subject of the
investigation. This designation never
changed during the balance of the Walsh
investigation and was reiterated in the OIC's

final report. No indictment was ever
brought against Armitage. Prior to being
informed that he was a subject of the investi-
gation, Armitage had for four and one-half
years been designated as a "witness" by the
OIC. No facts unique to Armitage were
uncovered at the point of the change in des-
ignation or thereafter. The law firm of
Schwalb, Donnenfeld, Bray & Silbert, which
filed the petition for fees on Armitage's be-
half, represented him throughout the investi-
gation and has filed with the petition detailed
affidavits supporting all the work done and
billed, as well as all expenses included in the
petition.

Pursuant to the Act, this Court, as direct-
ed by 28 U.S.C. § 593(f)(2), forwarded a copy
of the petition to the Attorney General for
the purpose of allowing her to file a written
evaluation of the request for the fees. She
has submitted a helpful evaluation for which
the Court expresses its appreciation and
which it has given due consideration and
afforded great weight in arriving at the deci-
sion announced herein.

## II. ANALYSIS

As we noted above, the Act permits the
reimbursement of fees only to "an individual
who is the subject of an investigation con-
ducted by an independent counsel." 28
U.S.C. § 593(f)(1). As we have previously
analyzed the requirements of the statute, a
successful petitioner must demonstrate that:

(1) he is a "subject" of such an investiga-
tion;

(2) the fees were incurred "during" the
investigation;

(3) to be reimbursable, the fees must be
such as "would not have been incurred but
for the requirements of [the Act];" and

(4) the fees are "reasonable."

*See, e.g., In re North,* 11 F.3d 1075 (D.C.Cir.
1993) (per curiam).

### A. *The Substantive Elements*

As to the three substantive elements, there
can be little question that Armitage has car-
ried his burden of establishing his entitle-
ment. The Attorney General contests none
of them. As she notes in her evaluation, due

to the statutorily designed unfamiliarity of the Department of Justice with the details of the Independent Counsel's investigation, she is not in a good position to comment on the important question of whether Armitage was a "subject," 28 U.S.C. § 593(f)(1), but she forthrightly notes that the fees sought in the petition were all incurred after the OIC informed Armitage that he had become a "subject" of the investigation. After a full review of the Independent Counsel's report, the petition, and the applicable law, we determine that Armitage is most similarly situated to former Secretary of State George Shultz, and that, like Shultz, he became a subject of the investigation and was such a subject at the time of the incurrence of the fee. Therefore, for the reasons of law outlined in *Shultz*, we determine that petitioner Armitage has, like the petitioner in *Shultz*, satisfied the definition of "subject." 8 F.3d at 850–51.

■ As to the "during" element, the only portion of the fees conceivably not allowable is the relatively small amount (approximately $5,000) incurred in connection with responding to the final report after that report was issued in August of 1993. However, as the Attorney General frankly notes in her response, under the precedents of this Court reasonable fees for legal "services involved in the preparation, filing, and sealing of a response to the Final Report are compensable even if they were incurred after the termination of the investigation." *In re North (Platt Fee Application)*, 31 F.3d 1188, 1190 (D.C.Cir.1994) (per curiam).

As to the "but for" requirement, neither the Attorney General nor this court has found any distinction between Armitage's predicament and that of the former Secretary of State that would make this case any different than *Shultz* in this respect. We therefore conclude that Armitage has brought his fees within the narrow definition of "but for" followed in *Shultz* and cases collected therein. *See Shultz*, 8 F.3d at 851.

We reiterate then that Armitage has satisfied all substantive elements for the award of fees as petitioned, leaving for determination by us and challenge by the Attorney General only the reasonableness of the amount for which he petitions.

## B. Reasonableness of Attorneys' Fees

We have established a body of precedent for the determination of reasonableness of attorneys' fees under the Act. Though the question of reasonableness is often a difficult one, we have generally " 'in determining the proper rate, ... consider[ed] the prevailing community standards and ... helpful case law.' " *Shultz*, 8 F.3d at 852 (quoting H.R.CONF.REP. No. 452, 100th Cong., 1st Sess. 31 (1977)). In *Shultz*, we approved an hourly rate for the former Secretary of State's lead attorney at $370 per hour and $310 per hour for that attorney's partner. We did so on the basis of "convincing affidavits from distinguished members of the District of Columbia bar supporting the proposition that for attorneys of the experience and reputation of [Shultz's counsel] the rates billed are well within the range charged by lawyers in the District of Columbia." *Id.* *See also In re Meese*, 907 F.2d 1192, 1202 (D.C.Cir.1990) (per curiam) (approving a rate of $300 per hour for representation of a sitting Attorney General); *In re Donovan*, 877 F.2d 982, 993 (D.C.Cir.1989) (per curiam) (approving $350 per hour for representation of a former Secretary of Labor).

■ In the present petition, Armitage seeks reimbursement for Earl J. Silbert at $250 per hour and Joseph M. Jones at $180 per hour. Both are partners in the Washington law firm of Schwalb, Donnenfeld, Bray & Silbert. Silbert is a distinguished former United States Attorney. They have furnished us with supporting affidavit evidence as to the reasonableness of their claimed rates. We find no unreasonableness as to any item charged. Therefore, multiplying the hours worked by their rates, we conclude that based upon our existing precedent, Armitage has established his entitlement to $51,195.08 in fees and expenses incurred in his defense during the Walsh investigation.

■ In prior cases, that analysis has ended our examination of the question of reasonableness. Armitage and his counsel have done everything we have ever required to establish their entitlement to the fees prayed under the Act. However, the Attorney Gen-

eral's evaluation in the present case raises a new question. She notes that the recently reenacted Ethics in Government Act includes precisely the attorneys' fees provision governing our previous cases. However, she further notes that the new version of the Act was accompanied by legislative history critical of our *Shultz* decision and reflecting a view that such high hourly rates as awarded in *Shultz* are not "reasonable" under 28 U.S.C. § 593(f). Specifically, H.R.CONF.REP. No. 103–511, 103d Cong., 2d Sess. 14 (1994) 1994 U.S.Code Cong. & Admin.News 748, 797, states:

> Congress did not intend that properly recoverable attorney fees under this statute be construed to be what the market will bear in the private sector. Rather, Congress intends that the reasonableness of the attorneys fee requests under the independent counsel law be judged, not solely with reference to the rates commanded by expensive legal counsel, but also with reference to what cost is reasonable for the taxpayers to bear.

The Attorney General then suggests that the Conference Report provides guidance in the determination of reasonableness by citing the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(2)(A), which limits hourly fees awarded under that statute to $75 (subject to increase for inflation) and the Criminal Justice Act, 18 U.S.C. § 3006A(d)(1), which awards fees to private counsel representing indigent defendants at a maximum hourly rate of $60 per hour for time in court and $40 per hour for time out of court, with a higher $75 hourly rate for time expended in court in particular circuits or districts such as the one where the work was performed in the present case.

The Attorney General then expresses the belief that this legislative history calls for a change in the court's approach in analyzing the reasonableness of hourly rates under 28 U.S.C. § 593(f). She suggests the belief that the "change in the law" should be applied retroactively to cover pending applications such as the present one under section 7 of the new Act, which provides, "Except as provided in this section, the amendments made by this Act shall apply with respect to independent counsels appointed before, on, or after the date of enactment of this Act." Independent Counsel Reauthorization Act of 1994, Pub.L. No. 103–270, § 7(a), 108 Stat. 732, 737 (1994).

The Attorney General contends that this is an express retroactivity provision compelling us to apply the "change" in the law and award Armitage fees based on a new method of determining reasonableness. The difficulty with the Attorney General's contention is not that section 7 is not an express retroactivity provision making changes in the law retroactive, but rather that there is no change in the law to apply either retroactively or prospectively. Congress reenacted precisely the language which we had construed in *Shultz* and the line of cases upon which it relies.

It is settled law that when a statute has an authoritative interpretation, and Congress reenacts it without change, "Congress is presumed to be aware of [the] interpretation ... and to adopt that interpretation...." *Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978). That is precisely what has happened here. We interpreted the statute in *Shultz* and those cases upon which it relied. Congress reenacted precisely the same statute. There is no change to be applied retroactively or otherwise.

The legislative history highlighted by the Attorney General does nothing to change the rule of law. The Supreme Court has more than once considered similar situations. In *Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Court considered the construction of the phrase "substantially justified" in the EAJA, 28 U.S.C. § 2412(d)(1)(A). In the case before the Supreme Court the 1985 reenactment of the EAJA was at issue, and that reenactment had adopted precisely the pre-existing language. Although the Supreme Court had not considered the issue under the prior statute, "the almost uniform appellate interpretation"[1] had previously construed the phrase

---

1. Twelve of thirteen circuits, with only the D.C.Circuit differing, agree with that interpretation. *See* cases collected in *Pierce*, 487 U.S. at 567, 108 S.Ct. at 2551.

**46**

as creating a standard of reasonableness. *Pierce,* 487 U.S. at 567, 108 S.Ct. at 2551. In arguing for a higher standard, the petitioner in *Pierce* relied upon a House Committee Report, H.R.REP. No. 99–120, p. 9 (1985) 1985 U.S.Code Cong. & Admin.News pp. 132, 138, accompanying the reenactment which declared that the " 'test must be more than mere reasonableness.' " *Pierce,* 487 U.S. at 566, 108 S.Ct. at 2550. The Supreme Court declared that the Report had no effect on the existing interpretation. *Id.* at 567–68, 108 S.Ct. at 2551.

As the *Pierce* Court held, for the language of the report to be controlling, it would have to be "either (1) an authoritative interpretation of what the 1980 statute meant, or (2) an authoritative expression of what the 1985 Congress intended." *Id.* at 566, 108 S.Ct. at 2551. It could not be the first because only the courts and not the legislature can "say what an enacted statute means." *Id.* It could not be the latter, because, by enacting the existing language, under *Lorillard,* Congress was reenacting the "settled judicial interpretation." *Id.,* 487 at 567, 108 S.Ct. at 2551. As the *Pierce* Court observed, "Quite obviously, reenacting precisely the same language would be a strange way to make a change." *Id.* Thus, the Court observed that the 1985 reenactment had made no change in the authoritative interpretation of the EAJA. The reasoning and the binding precedent of *Pierce* compel us to reach the same conclusion as to the reenactment of the Ethics in Government Act. The authoritative construction of the language is the same as it was before. The legislative history of a reenactment cannot change existing law.

"Congress, of course, has the power to amend a statute that it believes we have misconstrued." *Rivers v. Roadway Express, Inc.,* ⸺ U.S. ⸺, ⸺, 114 S.Ct. 1510, 1519, 128 L.Ed.2d 274 (1994). It may amend such a statute retroactively to "undo what it perceives to be the undesirable past consequences of a misinterpretation of its work product," within constitutional bounds. *Id.* But "[n]o such change ... has the force of law unless it is implemented through legislation." *Id.*

A congressional report, even a conference report, is not legislation. Legislation, by "[e]xplicit and unambiguous provisions of the Constitution," requires that " 'every bill' " to become law must be passed by both Houses and " 'presented to the President of the United States....' " *Immigration and Naturalization Serv. v. Chadha,* 462 U.S. 919, 945, 103 S.Ct. 2764, 2781, 77 L.Ed.2d 317 (1983) (quoting U.S. Const. Art. I, § 7 cl. 2). A conference committee report has been adopted by neither House and certainly has not been presented to the President of the United States. It is not legislation and it does not change the law.

We add in closing that we do not intend any criticism of the Attorney General for calling the report to our attention. In the diligent performance of her duty under the Act to evaluate fee petitions, she will no doubt frequently consider more wide-ranging subjects than we as a court bound to decide the question may eventually find controlling. We thank her once again for her efforts. But, in the end, we hold the law to be unchanged, the petition to be in order, and the petitioner to be entitled to the relief prayed.