EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellant,

and

Darlene Walters, Intervening
Plaintiff–Appellant,

v.

METROPOLITAN EDUCATIONAL EN-
TERPRISES, INCORPORATED, and
Leonard Bieber, Defendants–Appellees.

Nos. 94–3334, 94–3592.

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1995.

Decided July 18, 1995.

Dori K. Bernstein (argued), E.E.O.C., Office of Gen. Counsel, Washington, DC, Sharon A. Seeley, John C. Hendrickson, Gregory M. Gochanour, E.E.O.C., Chicago, IL, for E.E.O.C.

Patrick J. Falahee, Jr. (argued), Law Offices of Patrick J. Falahee, Chicago, IL, for Metropolitan Educational Enterprises, Inc., Leonard Bieber.

Constantine J. Gekas (argued), Adrianne S. Harvitt, Harvitt & Gekas, Chicago, IL, for Darlene Walters.

Before CUMMINGS, EASTERBROOK and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

This case presents the question whether, by virtue of recent legislative developments or a closer look at old ones, this Court should overrule its decision in *Zimmerman v. North American Signal Co.*, 704 F.2d 347 (7th Cir. 1983). In that case, we defined "employer" in the context of the Age Discrimination in Employment Act ("ADEA"), a construction since extended to other anti-discrimination legislation including Title VII. The Equal Employment Opportunity Commission ("EEOC") urges us to adopt a more expansive definition. Intervening plaintiff Darlene Walters joins in this plea for the simple reason that our *Zimmerman* definition forecloses her Title VII retaliatory discharge claim against the defendants, her former employer and the company's president. We are not persuaded that subsequent events dictate overruling *Zimmerman*, however, and therefore reject the EEOC's and Walters' invitation to do so.

## BACKGROUND

The EEOC sued Metropolitan under § 704(a) of Title VII (42 U.S.C. § 2000e–3(a)) in 1993, alleging that Metropolitan had fired Walters three years earlier in retaliation for her filing of a gender discrimination charge. Walters subsequently intervened as plaintiff. Metropolitan moved to dismiss the suit for lack of subject matter jurisdiction, alleging

that the company was not an "employer" under Title VII, and the parties proceeded to discovery on that question. In August 1994, after analyzing the parties' stipulations regarding Metropolitan's payroll records, the district court granted defendants' motion to dismiss on the ground that Metropolitan did not qualify as an employer under Title VII and there was accordingly no federal jurisdiction.[1] 864 F.Supp. 71, 73 (N.D.Ill.1994).

Under Title VII, an employer is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). The statute does not explicitly prescribe a method of counting employees to verify whether the requisite minimum of 15 is reached, but two have emerged from case law. One, endorsed by the EEOC and adopted by a number of courts, is the "payroll method." It looks at the number of employees maintained on an employer's payroll within a given week: if this number is at least 15 for at least 20 calendar weeks the jurisdictional minimum is satisfied, regardless of whether or not every employee on the payroll shows up for work every day of the calendar week.

The alternative method counts all salaried employees toward the minimum, but takes a different approach toward hourly or part-time workers. Such workers are considered employees only on days when they are physically present at work or are on paid leave. The jurisdictional minimum of employees must be at the workplace or on paid leave for each day of the work week, or the week will not be counted.

In *Zimmerman*, the Seventh Circuit endorsed this counting system and rejected the payroll approach.[2] The panel in that case examined the statutory language of the ADEA and focused on its provision (like Title VII's) that an employer must have the requisite number of employees "for each working day of a week before that week can be counted toward the jurisdictional minimum." *Id.* at 353–354. Seeing no way to reconcile the phrase "for each working day" with the payroll method, the panel held that the correct method excluded hourly paid workers on days when they were neither working nor on paid leave. *Id.* To conclude otherwise, the *Zimmerman* panel held, would render the words "for each working day" superfluous and would be contrary to the "explicit definitional restriction chosen by Congress." *Id.*[3] The panel also noted that had Congress wanted to define the jurisdictional minimum in terms of the number of employees on the payroll each week, it could certainly have done so. *Id.*

## ANALYSIS

The EEOC and Walters aim a fusillade of arguments at *Zimmerman*. Primarily they

---

1. Walters brought pendent state claims in addition to her Title VII claim, which the district court also dismissed.

2. *Zimmerman*, as we have stated, involved a claim brought under the ADEA rather than one brought pursuant to Title VII. The district court, however, properly found *Zimmerman* dispositive. Because Title VII and the ADEA have a common purpose, we have relied upon cases interpreting a definition in one statute as persuasive when construing a similar definition in the other. *Hayden v. La–Z–Boy Chair Co.*, 9 F.3d 617, 619 (7th Cir.1993), certiorari denied, —— U.S. ——, 114 S.Ct. 1371, 128 L.Ed.2d 47.

   The ADEA's definition of employer is "essentially identical to Title VII's," and "[c]ourts routinely apply arguments" to the two interchangeably. *EEOC v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1280 and n. 1 (7th Cir.1995); see also *Zimmerman*, 704 F.2d at 352 (ADEA provision is "nearly identical to the definition of em-

ployer in Title VII."). While Walters argues that we may view this case unfettered by *Zimmerman* therefore, the mirror similarity between the definition of employer in the two contexts and their common purpose counsels—indeed requires—deference to our precedent.

3. The *Zimmerman* panel also concluded that the legislative history of Title VII, on which the relevant provisions of the ADEA are based, offered little interpretive assistance. 704 F.2d at 352–353. Plaintiffs contend that in fact, the legislative history of Title VII supports their reading, and base this argument on remarks of Senator Dirksen which suggest that Title VII's definition of employer was borrowed from the Unemployment Compensation Act. Although certain remarks of Senator Dirksen are consistent with plaintiffs' argument, we agree with the *Zimmerman* court that the legislative history of Title VII is too confused and chaotic to be of much use. See also *EEOC v. Missouri Pac. R. Co.*, 493 F.2d 71, 74 (8th Cir.1974).

contend that in enacting the Family and Medical Leave Act ("FMLA"), Congress endorsed the payroll method over the *Zimmerman* alternative in a manner that counsels deference from this Court. They also point to other case law and the EEOC's own guidelines which are contrary to the holding in *Zimmerman*. Finally, they submit that the payroll approach comports better with public policy considerations.

■ In considering these arguments, we bear in mind that compelling reasons are required to overturn Circuit precedent. "*Stare decisis* is of fundamental importance to the rule of law," *Hilton v. South Carolina Public Railways Comm'n,* 502 U.S. 197, 202, 112 S.Ct. 560, 563, 116 L.Ed.2d 560 (1991), and has even greater force when the precedent in question involves a statutory construction. See *Patterson v. McLean Credit Union,* 491 U.S. 164, 172, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989).

■ We also note that this Court based *Zimmerman* on a reading of the statute's plain text that we continue to endorse. As the *Zimmerman* panel noted, the phrase "for each working day" must be given some meaning within the context of the statute, and the most natural interpretation of that phrase looks to the number of employees physically at work on each day of the week. Plaintiffs suggest an alternative interpretation that looks to situations when an employee joins or exits the payroll mid-week; this seems a highly unlikely reading of the statute, particularly since instances where employees begin work on Wednesdays or depart on Thursdays are unlikely to occur with sufficient frequency to merit inclusion in a federal anti-discrimination statute.

■ While agreeing that the statute could have been worded more clearly, we believe that the *Zimmerman* court's interpretation of its plain text has stood the test of time and a new set of appellate eyes. Generally, a judicial construction of the plain language of the statute ends the matter conclusively: the

law is clear that when a court can glean the meaning of a statute from its text, it should look no further. *United States v. Hudspeth,* 42 F.3d 1015, 1022 (7th Cir.1994), certiorari denied, —— U.S. ——, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995).

■ Notwithstanding this fact, plaintiffs contend that the recent passage of the FMLA, with a definition of "employer" that closely tracks those in the ADEA and in Title VII, is reason enough for us to re-examine *Zimmerman*'s holding.[4] The Senate Report for the FMLA endorses the payroll approach to identifying employers:

> The quoted language parallels language used in Title VII of the Civil Rights Act of 1964 and is intended to receive the same interpretation. As most courts and the EEOC have interpreted this language, "employs * * * employees for each working day" is intended to mean "employ" in the sense of maintain on the payroll. It is not necessary that every employee actually perform work on each working day to be considered for this purpose.

S.Rep. No. 3, 103d Cong., 1st Sess. 21–22 (1993), U.S.Code Cong. & Admin.News 1993, pp. 3, 24. Such congressional commentary, unfortunately for plaintiffs, has little effect on our view of Title VII. First, the Congress that passed the FMLA has no special sanction to interpret the actions of a previous Congress. "The interpretation given by one Congress (or a committee or Member thereof) to an earlier statute is of little assistance in discerning the meaning of that statute." *Pub. Employees Retirement Sys. of Ohio v. Betts,* 492 U.S. 158, 168, 109 S.Ct. 2854, 2862, 106 L.Ed.2d 134 (1989).

■ Second, although plaintiffs designate the adoption of the FMLA as a "significant development of the law on the proper interpretation of the statutory definition of 'employer' contained in Title VII," Pl.Br. at 13, this purported legal milestone occurred not within the text of the statute, but within legislative history, which has no force of law. As the District of Columbia Circuit recently

---

4. The FMLA defines an employer as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i).

observed, "A congressional report, even a conference report, is not legislation ... and it does not change the law." *In re North,* 50 F.3d 42, 46 (D.C.Cir.1995); see also *Davel v. Sullivan,* 902 F.2d 559, 562 (7th Cir.1990) ("The words of the statute, not the words of the legislative history, control statutory interpretation").

■ The Supreme Court has explicitly rejected the notion that judicial interpretation of a statute owes deference to language in a legislative report. In *Pierce v. Underwood,* the Court held that where there was an "almost uniform appellate interpretation" of legislation, re-enactment of the same statutory language would be presumed to re-enact that "settled judicial interpretation" regardless of a legislative report to the contrary. 487 U.S. 552, 567, 108 S.Ct. 2541, 2551, 101 L.Ed.2d 490 (1988). While further action taken by Congress can justify the abandonment of statutory precedent, see *Patterson v. McLean Credit Union,* 491 U.S. 164, 173, 109 S.Ct. 2363, 2370–71, 105 L.Ed.2d 132, legislative history is not akin to legislative action. See *Pierce,* 487 U.S. at 567–568, 108 S.Ct. at 2551–52.

In this case, as plaintiffs point out, there is an existing Circuit split, not a settled judicial interpretation, regarding the correct means of determining who is an employer. Still, we note that had Congress truly intended to enact the payroll method into law, it certainly could have done so in clear and unambiguous terms. *Cf. Pierce,* 487 U.S. at 568, 108 S.Ct. at 2551 (where legislative report is out of accord with prior usage, "the clearest indica-

tion of congressional command" will be required). Instead, knowing (because *Zimmerman* and other like cases so instructed it) that Title VII's and the ADEA's "for each working day" language was problematic, Congress chose not to respond to these concerns in enacting the FMLA. If indeed Congress wished to resolve the Circuit conflict in a particular direction, this was "a strange way to make a change." *In re North,* 50 F.3d at 46, quoting *Pierce,* 487 U.S. at 567, 108 S.Ct. at 2551.

Plaintiffs also argue that judicial and regulatory authority from other Circuits and from the EEOC support overruling *Zimmerman.* Among our sister Circuits, the First and Fifth have adopted the payroll method, as have a number of district courts;[5] the Eighth Circuit and several other district courts have adopted the *Zimmerman* approach.[6] The EEOC's Statement of Policy Guidance explicitly rejects the *Zimmerman* approach and endorses the payroll method. EEOC Policy Guidance, EEOC Compliance Manual, Vol. II, Notice No. N–915–052 (April 20, 1990).

■ Regarding the Circuit split, it is enough to note the large number of recent cases on both sides of the issue; that some courts have disagreed with our analysis while others have adopted it hardly presents a pressing reason to overturn settled precedent. The EEOC's Compliance Manual, on the other hand, was promulgated well after our decision in *Zimmerman.* While we afford deference to legitimate agency interpre-

---

5. See, *e.g., Thurber v. Jack Reilly's, Inc.,* 717 F.2d 633, 634–635 (1st Cir.1983), certiorari denied, 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984); *Dumas v. Town of Mount Vernon,* 612 F.2d 974, 979 n. 7 (5th Cir.1980); *Reith v. Swenson,* 63 Fair Empl.Prac.Cas. 885, 897, 1993 WL 108056 (D.Kan.1993); *Cohen v. S.U.P.A. Inc.,* 814 F.Supp. 251, 254–256 (N.D.N.Y.1993); *Vano v. Au,* 1992 WL 175498 at *2 (W.D.Va.1992); *Gorman v. North Pittsburgh Oral Surgery Assocs., Ltd.,* 664 F.Supp. 212, 214 (W.D.Pa.1987); *Evans v. Davie Truckers, Inc.,* 38 Fair Empl.Prac.Cas. 1553, 1554, 1984 WL 49007 (M.D.N.C.1984), affirmed, 769 F.2d 1012 (4th Cir.1985); *Lynn v. JER Corp.,* 573 F.Supp. 17, 20 (M.D.Tenn.1983); *Hornick v. Borough of Duryea,* 507 F.Supp. 1091, 1098 (M.D.Pa.1980); *Pedreyra v. Cornell Prescription Pharmacies, Inc.,* 465 F.Supp. 936, 941 (D.Colo.1979).

6. See, *e.g., EEOC v. Garden and Associates, Ltd.,* 956 F.2d 842 (8th Cir.1992); *McGraw v. Warren County Oil Co.,* 707 F.2d 990, 991 (8th Cir.1983); *Richardson v. Bedford Place Housing Phase I Associates,* 855 F.Supp. 366 (N.D.Ga.1994); *Wright v. Kosciusko Medical Clinic, Inc.,* 791 F.Supp. 1327, 1332 (N.D.Ind.1992); *Lord v. Casco Bay Weekly, Inc.,* 789 F.Supp. 32, 34–35 (D. Maine 1992); *Norman v. Levy,* 756 F.Supp. 1060, 1063–1064 (N.D.Ill.1990); *EEOC v. Argent Industries, Inc.,* 746 F.Supp. 705, 708–709 (S.D.Ohio 1989), amended in part on other grounds, 58 Fair Empl.Prac.Cas. 842, 1988 WL 285578 (1988); *Schoenbaum v. Orange County Center for the Performing Arts, Inc.,* 677 F.Supp. 1036, 1039 (C.D.Cal.1987).

tations of statutory language made before we have ruled on an issue, the converse is not true: the judiciary, not administrative agencies, is the final arbiter of statutory construction. See *Chevron, USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984).

■ Finally, plaintiffs urge us to consider potential policy problems inherent in our retention of the *Zimmerman* standard in the face of a conflicting interpretation regarding the FMLA. We have not yet been asked to interpret the FMLA and decline to create a conflict where none yet exists. Plaintiffs also present a parade of horribles that could result from continued application of *Zimmerman,* most notably an employer's ability to evade the strictures of anti-discrimination legislation simply by structuring operations to avoid having the jurisdictional minimum present on each working day. Yet in more than a decade since this Court ruled in *Zimmerman,* this parade has had conspicuously few participants. Finally, plaintiffs argue that the payroll method is simpler to implement; this rationale, however, simply is not sufficient to override settled statutory interpretation.

## CONCLUSION

Failing to see a compelling reason for overturning our Circuit precedent in *Zimmerman,* we affirm the judgment of the district court dismissing plaintiffs' suit for lack of jurisdiction.

RIPPLE, Circuit Judge, concurring.

I join the judgment of the court. Although the correctness of *Zimmerman v. North American Signal Company,* 704 F.2d 347 (7th Cir.1983), is not free from doubt, I must conclude, with some reluctance, that the EEOC has not made a sufficiently strong case to warrant our overruling established precedent of long standing. As the majority notes, our obligation to adhere to the doctrines of stare decisis and precedent is especially strong when we are dealing with matters of statutory construction. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 172, 109 S.Ct. 2363, 2370, 105 L.Ed.2d 132 (1989).

That obligation is tempered somewhat by our obligation to reassess our work when a thoughtful divergence of opinion emerges from the other circuits. Upon examination of the case law to the contrary, however, I cannot say that those cases cast such a shadow on *Zimmerman* as to justify its overruling. This issue is one, however, that deserves definitive legislative attention. The ambiguity of the present situation ought to be clarified. The scope of Title VII ought to be the same in Boston and New Orleans as it is in Chicago.