EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
Plaintiff,

v.

ST. FRANCIS XAVIER PAROCHIAL SCHOOL and St. Francis Xavier Church, Defendants.

Civil Action No. 94–314 SSH.

United States District Court, District of Columbia.

June 4, 1996.

Tracy Hudson Spicer, Diane Bradley, Arlene T. Shadoan, EEOC, Baltimore, MD, for Plaintiff.

Anthony P. Interdonato, James T. Reilly, Interdonato, Reilly & Comstock, Washington, DC, for Defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

A jury trial of the instant action was scheduled to commence on March 5, 1996. The parties' pretrial statements, submitted for a conference held on February 28, 1996, alerted the Court to the fact that the parties contemplated trying the issue of subject matter jurisdiction to the jury. Because this issue raises questions of law, not properly susceptible to resolution by a jury, the Court requested that the parties brief the issue of jurisdiction.

Before the Court are "Plaintiff's Memorandum on Subject Matter Jurisdiction," "Memorandum of Defendants," "Plaintiff's Reply Memorandum on Subject Matter Jurisdiction," and "Defendants' Response to Plaintiff's Memorandum." Because plaintiff carries the burden of demonstrating subject matter jurisdiction, the Court treats defendants' memorandum as a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). Upon consideration, the Court grants defendants' motion and dismisses the case for lack of subject matter jurisdiction. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," Fed.R.Civ.P. 52(a), the Court nonetheless sets forth briefly its analysis.

### Background

This action arises from a phone call placed by Roberta A. Stein to defendant St. Xavier Parochial School (the "School") on August 17, 1992, in response to an advertisement for a part-time music teacher that defendant had published in *The Washington Post.* Ms. Stein has multiple sclerosis and uses a wheelchair. She claims that the School discriminated against her in employment because of her disability. Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), filed the instant action against both the School and St. Francis Xavier Church (the "Church") on her behalf.

The parties agree that a telephone conversation took place between Ms. Stein and the principal's secretary, Mrs. Mildred Sherrill, but there is disagreement about the content of that conversation. Plaintiff's version is as follows: When Ms. Stein called the School, Mrs. Sherrill informed her that the School was in the process of scheduling appointments for interviews. Mrs. Sherrill inquired whether Ms. Stein had an educational background in music and, when Ms. Stein said yes, scheduled an interview for 10:00 a.m. on August 18, 1992. Ms. Stein then asked whether the building was wheelchair accessible; Mrs. Sherrill put her on hold for several minutes. When Mrs. Sherrill returned, she told Ms. Stein that the interview had been canceled. Ms. Stein then suggested that the School accommodate her by conducting the interview outside; she was again put on hold, after which she was told that the School would not make this accommodation. Ms. Stein then asked, "You mean you won't even make an accommodation for an interview because of my disability?" to which Mrs. Sherrill responded, "I wouldn't put it that bluntly" and informed Ms. Stein that she should direct further questions to the principal. Pl.'s Pretrial Statement at 2–3.

Defendants allege that when Ms. Stein called, she indicated that she was calling about the advertisement and asked whether the building was wheelchair accessible. Mrs. Sherrill advised her that the building was not accessible and that the position had already been filled. Ms. Stein became upset and asked whether Mrs. Sherrill had said that the position had been filled because Ms. Stein had indicated that she is handicapped. Mrs. Sherrill denied this motive, and Ms. Stein became upset. Mrs. Sherrill placed Ms. Stein on hold to let her calm down; when she picked up the phone, she asked Ms. Stein, who had not identified herself, to leave

her name and phone number so that the principal could call her, but Ms. Stein said that she would call back later. Def.'s Pretrial Statement at 1–2.

Plaintiff brought this action under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.,* alleging that defendants failed to make a reasonable accommodation that would have allowed Ms. Stein to interview and failed to hire her because of her disability. The ADA incorporates by reference certain provisions of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 12111(7) (incorporating by reference 42 U.S.C. §§ 2000e(g), (h); 42 U.S.C. § 12117 (incorporating 42 U.S.C. §§ 2000e–4—2000e–9)). Plaintiff also seeks damages pursuant to 42 U.S.C. § 1981a.

### *Analysis*

The ADA defines an "employer" as "a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year."[1] 42 U.S.C. § 12111(5)(A). Defendants' memorandum sets forth two challenges to the Court's exercise of subject matter jurisdiction in this case. Defendants assert that (1) they are not covered by Title I of the ADA because they are not an industry affecting commerce with 25 or more employees; and (2) that the exemption for religious entities in Title III of the ADA (which relates to public accommodations) by implication exempts defendants from the provisions of Title I.

### I. *The Definition of "Employer"*

#### A. *Industry Affecting Commerce*

As noted above, the ADA covers employers who are "engaged in an industry affecting commerce." The ADA refers to 42 U.S.C. § 2000e: "The term 'industry affecting commerce' means any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce."

Defendants contend that the School is not an "industry affecting commerce" under this definition. Nonetheless, the School and its employees have engaged in activities that affect commerce. The School purchased supplies and books from companies outside of the District of Columbia. During 1992, approximately five of its employees commuted to the School from outside of the District. Employees made interstate telephone calls and mailed letters to locations outside of the District of Columbia. Pl.'s Mem., Ex. 1; *see, e.g., Martin v. United Way of Erie County,* 829 F.2d 445 (3d Cir.1987) (finding effect on interstate commerce where defendant purchased products and supplies from outside of Pennsylvania and where employees traveled out of state on employer's business and made interstate telephone calls). The effect of the School's conduct on interstate commerce is sufficiently "substantial" to place it within the ambit of the Act. However, plaintiff has not provided any evidence that the other defendant, the Church, engaged in activities that affect interstate commerce, and so this issue is inconclusive as to that defendant (although the Court presumes that some of the same factors exist with respect to the Church).

#### B. *"Integrated Enterprise" Theory*

Title I of the ADA applies to the School only if it had 25 or more employees during the current or preceding calendar year. "Current calendar year" is defined as the year in which the alleged discrimination occurred. *Cf. Musser v. Mountain View Broadcasting,* 578 F.Supp. 229, 230 (E.D.Tenn.1984) (interpreting identical language in the Title VII context). Because Ms. Stein made the telephone call on August 17, 1992, the years relevant to this action are 1991 and 1992.

It is undisputed that the School employed fewer than 25 employees at all times pertinent to this action. Recognizing this, plaintiff argues that pursuant to the "single employer doctrine," the Court has subject matter jurisdiction because the School, the

---

**1.** Because the event underlying the instant action occurred within the two years following the effective date of the ADA, the jurisdictional threshold is 25 or more employees. 42 U.S.C. § 12111(5)(A).

Church, and the Parish's Day Care Center together allegedly employ more than the requisite 25 persons.[2]

■ Under the single employer doctrine, superficially distinct entities that represent a single, integrated enterprise may be exposed to liability as a single employer. Where sufficient control is found, the combined number of employees will determine whether defendants are subject to the statutory requirements. Plaintiff asserts that the Church operates the School and the Day Care Center; therefore, the three entities should be considered one.

■ For guidance in testing the degree of interrelationship, the Court looks to the four-part test formulated by the National Labor Relations Board ("NLRB") and approved by the Supreme Court in *Radio Union v. Broadcast Serv.*, 380 U.S. 255, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965). The test assesses the degree of (1) interrelation of operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control. *Id.* at 255–57, 85 S.Ct. at 877. The NLRB developed this four-part standard as a means of determining whether two entities comprise a single employer in the context of labor disputes. *Id.* Thereafter, courts began applying the test in Title VII and related cases. *See Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240–41 (2d Cir.1995); *Garcia v. Elf Atochem N. Am.*, 28 F.3d 446, 450 (5th Cir.1994); *Armbruster v. Quinn*, 711 F.2d 1332, 1337 (6th Cir.1983); *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir.1977); *see also Doe v. Shapiro*, 852 F.Supp. 1246 (E.D.Pa. 1994) (applying the test in the ADA context); *Rogers v. Sugar Tree Products, Inc.*, 824 F.Supp. 755 (N.D.Ill.1992), (applying the test in the Age Discrimination in Employment Act (ADEA) context), *aff'd*, 7 F.3d 577 (7th Cir.1993). Although the absence or presence of any single factor is not conclusive, control over the elements of labor relations is a central concern. *Armbruster*, 711 F.2d at 1337.

Plaintiff must make a substantial showing to warrant a finding of single employer status. There must be "sufficient indicia of an interrelationship between the immediate corporate employer and the affiliated corporation to justify the belief on the part of an aggrieved employee that the affiliated corporation is jointly responsible for the acts of the immediate employer." *Armbruster*, 711 F.2d at 1332; *see also Fike v. Gold Kist, Inc.*, 514 F.Supp. 722, 726 (N.D.Ala.1981) (citations omitted) (the entities must be "highly integrated with respect to ownership and operations"), *aff'd*, 664 F.2d 295 (11th Cir. 1982).

■ Given the weight of this authority, the Court adopts the four-part standard and applies it to the instant action. Having described the degree of control that is necessary, the Court proceeds to evaluate the relationship between the enterprises in the light most favorable to the plaintiff.

### 1. *Integration of Operations*

Courts consider as indicia of interrelatedness factors such as combined accounting records, bank accounts, lines of credit, payroll preparation, telephone numbers, or offices. *See Western Union Corp.*, 224 N.L.R.B. 274, 1976 WL 7018, *aff'd*, 571 F.2d 665 (D.C.Cir.1978).

Here, the School has a separate budget.[3] Pl.'s Mem., Ex. 5 at 39–40. Daily operations are independent. Hours of operation are significantly different: the Day Care Center is open both earlier and later than the School on days when both are open; the Church alone is open on Saturdays and Sundays.

---

**2.** The Court observes that plaintiff has not established that it would meet the jurisdictional threshold of 25 employees even if the Court were to aggregate the three establishments. *See* discussion on counting employees, *infra* part I.C.

**3.** Plaintiff argues that the fact that the Pastor signs the School's budget is evidence of integration of operations. Pl.'s Mem. at 6–7. This argument, however, proves too much. The budget is worked out in conjunction with the Catholic Schools Office of the Archdiocese and then is signed by the Pastor and the Principal. The Archdiocese, rather than the Pastor, has ultimate control over the School's budget. Pl.'s Mem., Ex. 5 at 39–40. Approval by the Pastor of a school budget negotiated directly with the Archdiocese does not make defendants a single employer.

The entities are operated by different staffs and each has its own principal or administrator. They have different employment contracts and practices.

The School is a separate entity, located in a building that is a block away from the Church and Day Care Center. There is some sharing of space: a room in the lower Church is occasionally used by the School for assemblies, but that use is limited by the needs of the Church and the Day Care Center. Pl.'s Mem., Ex. 5 at 37–38. The school-children eat lunch in a room that is also used by the Day Care Center; however, the School and the Day Care Center do not use the room at the same time. Def.'s Mem. at 6. This minimal sharing of space is not sufficient to render the entities interrelated. *Cf. Doe*, 852 F.Supp. at 1250–51 (legal arm of corporation that received at least 90% of cases from the corporation and shared office suite, resources, fax and phone numbers, and printing services with corporation is sufficiently interrelated).

### 2. *Common Management*

Plaintiff conflates the second and third prongs of the test and does not advance any bases for a finding of common management aside from defendants' hiring practices, which are discussed below. The focus of this factor, however, is on the existence of common directors and officers for different entities. *Fike*, 514 F.Supp. at 727 (citations omitted). Here, there are separate management structures for the Church, the Day Care Center, and the School. These structures do not continuously monitor one another. The circumstances present here do not warrant a finding of common management. *See Harris v. Palmetto Tile, Inc.*, 835 F.Supp. 263, 268 (D.S.C.1993) (record does not support finding of single employer where different managers "controlled the daily operations and employment practices" of the entities); *cf. Cook*, 69 F.3d at 1241 (finding common management where one corporation ran the other "in a direct, hands-on fashion, establishing the operating practices and management practices").

### 3. *Centralized Control of Labor Operations*

■ "It is well settled that the 'control' required to meet the test of centralized control of labor relations is not potential control, but rather actual and active control of day-to-day labor practices." *Fike*, 514 F.Supp. at 727. Plaintiff has not met this burden.

The enterprises here have separate employees, directors, and employment practices. The sole way in which the Church is involved with the labor practices of the School is in the final phases of hiring. Plaintiff asserts that the Pastor "interviews all applicants for the School," but plaintiff's own exhibits contradict this assertion. Rather, the principal and assistant principal screen resumes and conduct interviews; the Pastor does not become involved until the end of the process, after the principal and assistant principal have selected two or three finalists, at which point he gives his input. Pl.'s Mem., Ex. 5 at 8; *id.*, Ex. 3 at 2. When there is a disagreement, the Pastor makes the final decision. *Id.*, Ex. 1 at 12; *cf. Cook*, 69 F.3d at 1241 (finding centralized control of labor relations where all applications for employment and personnel status reports for one corporation were channeled through the other). The entities have different administrators and distinct labor pools. *Cf. Armbruster*, 711 F.2d at 1338 (control of labor found where employees were routinely transferred between corporations). Plaintiff does not present adequate evidence of day-to-day active control by the Church of the School's labor relations to justify a finding that the entities should be treated as a single employer.[4]

### 4. *Common Ownership or Financial Control*

■ The parties agree that there is common ownership of the property and the buildings in which the Day Care Center, the Church, and the School are located, Pl.'s Mem., Ex. 5 at 39; Def.'s Resp. to Pl.'s Mem. at 2, and that the Pastor must sign the School's budget. Pl.'s Mem., Ex. 5 at 39. Nonetheless, the Parish is part of the Archdi-

---

**4.** Plaintiff does not present any evidence of control by the Church of the Day Care Center's labor operations.

ocese of Washington, which is the corporate entity that owns the property and the buildings. Further, as mentioned above, the Archdiocese has ultimate control over the School's budget. *See* discussion, *supra* note 3. The Archdiocese is not a party to this action.[5]

Even though the Archdiocese, rather than the Parish, is the owner and locus of financial control, the Parish does have some intermediary supervisory power over the School. However, given (1) the Archdiocese's ultimate control over the School's budget, (2) the Archdiocese's status as owner of the property and buildings, and (3) the fact that the School, the Church, and the Day Care Center have separate budgets, *see* Pl.'s Mem., Ex. 2, the Court finds that this factor does not support a finding that the entities constitute a single employer. *Cf. Armbruster,* 711 F.2d at 1338–39 (court found "significant measure of control" where one corporation " 'handled' " the other's accounts receivable, provided it with administrative backup, handled its payroll and cash accounting, monitored all sales shipments, and kept its bank accounts near the headquarters even though the corporation was in another state).[6] Accordingly, the Court declines to apply the integrated enterprise doctrine to consolidate defendants into constituting a single employer.

### C. *Counting Employees*

Even if defendants could be considered to be a single employer for purposes of the Act, plaintiff still has not cleared the jurisdictional threshold of establishing that defendants had 25 employees during the relevant time period

once the total number is adjusted to account for part-time and hourly employees. The parties offer varying (and sometimes self-contradictory) estimates: 27, including part-time employees, Def.'s Mem. at 4; 24, excluding 4 part-time employees, *id.;* 41, including part-time employees, Pl.'s Mem. at 5; 39, including part-time employees, Pl.'s Resp. at 3; 33, excluding part-time employees, *id.* Plaintiff has attached two exhibits that list the employees, but Exhibit Three does not specify whether it applies to the relevant time period and it does not indicate whether the Parish employees worked full-time or part-time. Exhibit Four is similarly unhelpful; it lists the employees for the 1992–93 school year, but the relevant *calendar* years are 1991 and 1992, considered from January 1, 1991, through December 31, 1992. *See McGraw v. Warren County·Oil Co.,* 707 F.2d 990, 991 (8th Cir.1983) (holding that identical language in the ADEA refers to the period from January 1 through December 31 and not any 12 consecutive months).

The ADA confers jurisdiction where the employer has "25 or more employees for each working day" but does not specify the method for counting employees. Courts have adopted two methods. The payroll method looks at the number of employees who were on the payroll in a given calendar week.[7] *Thurber v. Jack Reilly's, Inc.,* 717 F.2d 633, 634–35 (1st Cir.1983), *cert. denied,* 466 U.S. 904, 104 S.Ct. 1678, 80 L.Ed.2d 153 (1984); *Dumas v. Town of Mount Vernon,* 612 F.2d 974, 979 n. 7 (5th Cir.1980); *Edwards v. Esau Invs.,* 66 F.E.P. Cases 711, 1994 WL 606073 (D.Kan.1994);

---

5. The Court observes that even if the Archdiocese were a party, common ownership alone is not enough to establish that separate employers are an integrated enterprise. *Rogers,* 824 F.Supp. at 762–63.

6. The Court notes that in the Sixth Circuit, the financial control prong of the test entails an inquiry into the legitimacy of the entities. "If neither of the entities is a sham then the fourth test is not met." *EEOC v. Wooster Brush Co. Employees Relief Ass'n,* 727 F.2d 566, 572 (6th Cir.1984) (citations omitted). None of the entities in this case is a sham. However, because the Court finds that plaintiff's showing of financial control is insufficient in any event, the Court does not determine whether this prong requires an inquiry into the legitimacy of the enterprises.

7. The EEOC has endorsed the payroll method of counting employees. EEOC Policy Guidance, EEOC Compliance Manual, Vol. II, Notice No. N–915–052 (April 20, 1990). While courts afford deference to legitimate agency interpretation of statutory language made before courts have ruled on an issue, no such deference is due to agency interpretations promulgated well after courts have construed the statute. *EEOC v. Metropolitan Educ. Enters.,* 60 F.3d 1225, 1229–30 (7th Cir.1995) (citing *Chevron, USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 841–43 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984)).

*Cohen v. S.U.P.A.*, 814 F.Supp. 251, 256 (N.D.N.Y.1993); *Gorman v. North Pittsburgh Oral Surgery Assocs.*, 664 F.Supp. 212, 214 (W.D.Pa.1987); *Lynn v. JER Corp.*, 573 F.Supp. 17, 20 (M.D.Tenn.1983). The result of this approach is that all hourly and part-time employees count toward the jurisdictional minimum even though they are not present at work on each day of the work week.

The other approach, followed in more recent cases, interprets the phrase to mean that all salaried employees count, but that hourly and part-time workers count toward the jurisdictional minimum only on days when they are physically present at work or on paid leave. *EEOC v. Metropolitan Educ. Enters., Inc.*, 60 F.3d 1225 (7th Cir.1995), *cert. granted*, —— U.S. ——, 116 S.Ct. 1260, 134 L.Ed.2d 209 (1996); *EEOC v. Garden and Assocs., Ltd.*, 956 F.2d 842 (8th Cir. 1992); *Zimmerman v. North American Signal Co.*, 704 F.2d 347, 353–54 (7th Cir.1983); *Goudeau v. Dental Health Servs.*, 901 F.Supp. 1139, 1143–44 (M.D.La.1995); *Richardson v. Bedford Place Hous. Phase I Assocs.*, 855 F.Supp. 366 (N.D.Ga.1994); *Young–Gerhard v. Sprinkle Masonry*, 856 F.Supp. 300, 301–02 (E.D.Va.1994);[8] *Lord v. Casco Bay Weekly*, 789 F.Supp. 32, 34–35 (D.Me.1992); *EEOC v. Argent Indus.*, 746 F.Supp. 705 (S.D.Ohio 1989). The Court finds that this unquestionably is the more logical construction of the statute.

▇▇▇▇ Generally, judicial construction of plain language ends the matter conclusively, at least in the absence of "a clearly expressed legislative intent to the contrary." *Qi–Zhuo v. Meissner*, 70 F.3d 136, 140 (D.C.Cir.1995) (citations omitted). Plaintiff urges, however, that the legislative history of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, is reason enough for the Court to adopt the payroll approach to identifying employees. The FMLA's definition of "employer" closely tracks the definition in the ADA. The Senate Report for the FMLA states:

> The quoted language parallels language used in Title VII of the Civil Rights Act of 1964 and is intended to receive the same interpretation. As most courts and the EEOC have interpreted this language, "[e]mploys * * * employees for each working day" is intended to mean "employ" in the sense of maintain on the payroll. It is not necessary that every employee actually perform work on each working day to be counted for this purpose.

S.Rep. No. 3, 193d Cong., 1st Sess. 21–22 (1993) U.S.Code Cong. & Admin.News 1993 pp. 3, 24. The Court finds plaintiff's argument unpersuasive. First, the legislative history refers to Title VII and the FMLA and seems, at best, inconclusive on its application to the ADA. Second, "[t]he interpretation given by one Congress (or a committee or Member thereof) to an earlier statute is of little assistance in discerning the meaning of that statute." *Pub. Employees Retirement Sys. v. Betts*, 492 U.S. 158, 168, 109 S.Ct. 2854, 2862, 106 L.Ed.2d 134 (1989). Furthermore, as the D.C. Circuit has stated in an analogous context:

> [F]or the language of the report to be controlling, it would have to be "either (1) an authoritative interpretation of what the [previously enacted] statute meant, or (2) an authoritative expression of what ... Congress intended." It could not be the first because only the courts and not the legislature can "say what an enacted statute means." It could not be the latter, because, by enacting the existing language

---

**8.** Plaintiff reads *Young–Gerhard* as supporting the payroll method of counting employees and asserts that "[d]efendants' reliance on [the case] is misplaced." Plaintiff, however, either misperceives *Young–Gerhard's* relevance to the instant action or is seeking to mislead the Court. That case compares language in two different provisions of Title VII. Section 2000e specifies "employees *for each working day* in each of twenty or more calendar weeks" (emphasis added), whereas § 1981a, Title VII's damage limitations provision, specifies "employees in each of 20 or more calendar weeks," omitting the emphasized language. The court concluded that "the difference expresses the Congressional intent that the number of employees working each day is not a factor to be considered in applying the damage limitations under § 1981a" but is a factor to be considered in determining the jurisdictional threshold under § 2000e. *Young–Gerhard*, 856 F.Supp. at 301–02. Section 12111(5)(A) of the ADA, which sets out the jurisdictional threshold, uses the language "for each working day."

... Congress was reenacting the "settled judicial interpretation".... "[R]eenacting precisely the same language would be a strange way to make a change".... The legislative history of a reenactment cannot change existing law.

*In re North,* 50 F.3d 42, 46 (D.C.Cir.1995) (citations omitted). Finally, legislative history has no force of law. "A congressional report, even a conference report, is not legislation ... and it does not change the law." *Id.*

The Court thus holds that part-time and hourly employees do not count toward the jurisdictional threshold during the time that they are not working or are on paid leave. Consequently, even if the Court were to aggregate all the employees pursuant to the single employer doctrine, plaintiff has not demonstrated that the three entities employ 25 full-time employees.[9] Accordingly, the Court finds that it does not have subject matter jurisdiction over this action.

II. *Exemption by Implication*

Defendants further allege that they are exempt from Title I of the Act by implication from their exemption from Title III. Having decided that there is no subject matter jurisdiction over this matter, the Court declines to consider this issue.

*Conclusion*

Upon consideration of the foregoing, defendants' motion to dismiss for lack of subject matter jurisdiction is granted.[10] In light of the Court's resolution of this matter, a trial is no longer appropriate; accordingly, the previously established pretrial conference and trial dates are vacated. An appropriate Order accompanies this Opinion.

*ORDER*

For the reasons stated in the accompanying Opinion, it hereby is

ORDERED, that what is considered to be defendants' motion to dismiss is granted. It hereby further is

ORDERED, that the pretrial conference set for July 9, 1996, and the trial set for July 16, 1996, are vacated.

SO ORDERED.

---

9. Defendants also raise the related issue of how to define the work week. The Church is open on Saturdays and Sundays, days when neither the School nor the Day Care Center operates. Only one or two employees work in the Church on those days. Def.'s Mem. at 5. Consequently, if the work week is defined to include Saturdays and Sundays, then defendants would not have the requisite number of employees "for each working day." *See* 42 U.S.C. § 12111(5)(A). Because the Court finds that plaintiff has not satisfied its burden of establishing subject matter jurisdiction in any event, the resolution of this issue does not affect the Court's analysis. However, the Court observes that the entities' different schedules underscore the Court's finding that defendants do not function as a single employer.

10. Defendants indicate that they intend to file a motion for an award of attorney's fees pursuant to 42 U.S.C. § 12205. *See* Def.s' Resp. to Pl.'s Mem. at 6. If defendants still intend to file such a motion, the parties should agree upon and file a joint briefing schedule within 14 days of the date of this Opinion. The Court alerts the parties, in particular, to the decision in *W.G. v. Senatore,* 18 F.3d 60 (2d Cir.1994) (holding that where trial court had previously dismissed case for lack of subject matter jurisdiction, court did not have subject matter jurisdiction to consider subsequent motion for attorney's fees and costs).