**Gregory R. CZERKIES,
Plaintiff–Appellant,**

v.

**U.S. DEPARTMENT OF LABOR, Employment Standards Administration and Office of Workers Compensation Programs, Defendants–Appellees.**

No. 93–3391.

United States Court of Appeals,
Seventh Circuit.

Submitted July 14, 1994.

Argued En Banc Dec. 19, 1995.

Decided Jan. 17, 1996.

---

Gregory R. Czerkies (argued), Lockport, IL, pro se.

William Kanter, Department of Justice, Civil Division, Appellate Section, Washington, DC, Ernest Y. Ling, Office of the United States Attorney, Civil Division, Chicago, IL, for Department of Labor.

William Kanter, John S. Koppel (argued), Department of Justice Civil Division, Appellate Section, Washington, DC, Lawrence W. Rogers, Department of Labor, Office of the Solicitor, Washington, DC, for Office of Workers' Compensation Programs.

Paul W. Mollica (argued), Meites, Frackman, Mulder & Burger, Chicago, IL, for Paul W. Mollica.

Before POSNER, Chief Judge, and CUMMINGS, COFFEY, FLAUM, EASTERBROOK, RIPPLE, MANION, KANNE, ROVNER, DIANE P. WOOD, and EVANS, Circuit Judges.

POSNER, Chief Judge.

Federal employees who are injured on the job can apply to the Office of Workers' Compensation Programs in the Department of Labor for workers' compensation benefits, including vouchers to enable the injured employee to pay for medical treatment of the injury. 5 U.S.C. § 8103(b). Mr. Czerkies, the plaintiff in this case, did this, and was turned down. He has tried to challenge the Office's decision by means of a suit in federal district court, in the teeth of a strongly worded judicial door-closing statute. The Federal Employees Compensation Act provides that "[t]he action of the Secretary [of Labor] or his designee in allowing or denying a payment under this [Act] is—(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise." 5 U.S.C. § 8128(b). We ordered the case to be heard en banc, in accordance with our Circuit Rule 40(e), in order to consider—more precisely, given *Marozsan v. United States*, 852 F.2d 1469 (7th Cir.1988) (en banc), to reconsider—the applicability of this door-closing provision, and ones like it, to constitutional claims that do not question the validity of a statute or other general rule or regulation. The district judge held that section 8128(b) does not bar constitutional claims, but he dismissed Czerkies' suit anyway, on the ground that the constitutional claim that Czerkies sought to advance was insubstantial. 833 F.Supp. 686 (N.D.Ill. 1993).

 No statute waives the sovereign immunity of the United States either with respect to claims by its employees for compensation for injuries sustained on the job (beyond what is allowed by the Federal Employees Compensation Act itself, see *Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 193–94, 103 S.Ct. 1033, 1036, 74 L.Ed.2d 911 (1983)) or to constitutional

claims generally. See, e.g., *FDIC v. Meyer*, — U.S. ——, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). Yet the government, usually vigilant to assert its sovereign prerogatives, concedes that sovereign immunity is not a bar to Czerkies' suit. It is right to concede this. The Administrative Procedure Act waives the federal government's sovereign immunity from actions seeking judicial review of federal administrative decisions, provided the action is not one for "money damages." 5 U.S.C. § 702; *Rose Acre Farms, Inc. v. Madigan*, 956 F.2d 670, 673 (7th Cir.1992). Czerkies claims that he was denied due process of law by the Office of Workers' Compensation Programs when it denied his claim. Although he did not caption his suit as one for judicial review of the denial, he is proceeding pro se and should not be penalized too harshly for failing to characterize his suit in the proper legal terms. If he is seeking damages or other monetary relief he is barred by sovereign immunity; if he is seeking an order that the Office of Workers' Compensation redetermine his entitlement he is not. No lay person could be expected to avoid the banana peel on which Czerkies has slipped. His handwritten complaint does not contain a request for relief as such, but merely a statement that should his case go to trial he would like a jury because he will be seeking punitive damages. Since the full relief sought is not specified, we are not obliged to construe the complaint as seeking *only* monetary relief, which is to say only the relief to which Czerkies is plainly not entitled. Rather than play "Gotcha!" with someone who through no fault of his own does not know the rules of the game, we should construe his suit as one not just for damages or other monetary relief but also for a direction that the Office of Workers' Compensation Programs process his claim in conformity with due process of law. We should in short construe the complaint as making the same request for dual monetary and equitable relief as in *Marozsan*, where we held that although the request for monetary relief was barred, the request for equitable relief was not.

 The government concedes that Czerkies' suit, because it alleges a constitutional violation, namely a denial of due pro-

cess, is also not barred by the door-closing statute. The issue is a jurisdictional one, so we are not bound by the government's concession. Neither are we bound by the decision of another circuit. But we should give due weight to the fact that a number of other circuits have agreed that 5 U.S.C. § 8128(b), despite its uncompromising language, does not bar constitutional challenges to decisions by the Office of Workers' Compensation Programs. *Brumley v. U.S. Dept. of Labor*, 28 F.3d 746, 747 (8th Cir.1994) (per curiam); *Benton v. United States*, 960 F.2d 19, 22 (5th Cir.1992) (per curiam); *Woodruff v. U.S. Dept. of Labor*, 954 F.2d 634, 639 (11th Cir. 1992) (per curiam); *Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir.1988); *Paluca v. Secretary of Labor*, 813 F.2d 524, 525–26 (1st Cir.1987); *Rodrigues v. Donovan*, 769 F.2d 1344, 1347–48 (9th Cir.1985). (A panel of this court cited three of these decisions approvingly in *Ezekiel v. Michel*, 66 F.3d 894, 898 (7th Cir.1995).) No circuit has disagreed. We ought not go out of our way to create intercircuit conflicts. *United States v. Hill*, 48 F.3d 228, 232 (7th Cir.1995).

Addressing the same issue under a similar statute (as noted in *Paluca v. Secretary of Labor, supra,* 813 F.2d at 526), we held in *Marozsan* that the door indeed remained open to constitutional claims. Marozsan, like Czerkies, claimed that he had been denied due process of law in an administrative proceeding in which he was seeking benefits (veterans' benefits in that case). He sought benefits plus a "directive" that the Veterans Administration comply with the due process clause, 852 F.2d at 1471 n. 3; he did not seek injunctive or class-wide relief. *Id.* at 1487–89 (dissenting opinion). *Marozsan* was an en banc decision, and nothing has happened since it was decided that would justify our overruling it. *EEOC v. Metropolitan Educational Enterprises, Inc.*, 60 F.3d 1225 (7th Cir.1995); *id.* at 1230 (concurring opinion). It is not as if a decisional tide were running against *Marozsan*. Subsequent decisions on whether door-closing statutes close the door to constitutional claims are consistent with *Marozsan*, as well as with the cases under 5 U.S.C. § 8128(b) that we have cited (several of which were decided after *Marozsan* ).

Two are decisions of the Supreme Court. *Dalton v. Specter*, — U.S. —, —, —, 114 S.Ct. 1719, 1726, 1728, 128 L.Ed.2d 497 (1994); *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 491–94, 111 S.Ct. 888, 895–97, 112 L.Ed.2d 1005 (1991). The others are decisions of our sister circuits. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1572–73 (10th Cir.1994); *Mace v. Skinner*, 34 F.3d 854, 858–59 (9th Cir.1994); *Schneider v. United States*, 27 F.3d 1327, 1332 (8th Cir. 1994); *Shafii v. PLC British Airways*, 22 F.3d 59 (2d Cir.1994); *Concerned Citizens of Nebraska v. NRC*, 970 F.2d 421, 424–25 (8th Cir.1992); *Reardon v. United States*, 947 F.2d 1509, 1514–17 (1st Cir.1991) (en banc); *Edelman v. Western Airlines, Inc.*, 892 F.2d 839, 845–47 (9th Cir.1989); *Kicking Woman v. Hodel*, 878 F.2d 1203, 1206–07 (9th Cir. 1989).

Prior to our decision in *Marozsan* some courts had held that the veterans' benefits law did preclude constitutional challenges. E.g., *Higgins v. Kelley*, 824 F.2d 690 (8th Cir.1987) (per curiam). But we have found only two cases decided since *Marozsan* that even appear to be inconsistent with our decision, *Baez v. INS*, 41 F.3d 19, 24 (1st Cir. 1994), and *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir.1994), and both are distinguishable. *Baez* involved a statute that closed the door to judicial review of deportation orders *after the order is executed;* it was not a door-closing statute, but a statute dealing with the timing of review. One is not surprised, therefore, that the court did not even cite its earlier decisions in *Paluca* or *Reardon.* *Sugrue* involved the same statute as *Marozsan*, but all it held is that redescribing a benefits claim as a constitutional claim will not get the claimant out from under the bar of the door-closing statute. "[C]ourts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms." 26 F.3d at 11. A "rhetorical cover," *id.,* will not open the door.

The circuits are in agreement: door-closing statutes do not, unless Congress expressly provides, close the door to constitutional claims, provided that the claim is colorable and the claimant is seeking only a new hearing or other process rather than a direct award of money by the district court. One does not, of course, need a statute to close the doors of the court to claims that are insubstantial, which is all that *Sugrue* holds.

Most of the decisions that deny judicial review of constitutional claims concern requests for monetary relief, where the sovereign immunity of the federal government is a bar unless there is a statutory waiver. *Thunder Basin Coal Co. v. Reich*, — U.S. —, — —, 114 S.Ct. 771, 779–81, 127 L.Ed.2d 29 (1994), did hold that a door-closing statute in the mine–safety act blocked a nonmonetary due process claim, but the circumstances were special. The agency that reviewed the mine operators' claims was independent of the agency that regulated mine safety. This independent agency had addressed constitutional claims previously, and—the most important point—its decisions were reviewable by a federal court of appeals. All these features are missing from the statutory scheme in this case. If Czerkies cannot maintain this suit, he has no administrative or judicial forum in which to litigate his claim that he was denied his constitutional right to due process of law. *Barmet Aluminum Corp. v. Reilly*, 927 F.2d 289, 293 (6th Cir.1991), which found a statutory bar to *pre-enforcement* constitutional challenges in one of the environmental-protection statutes, is again different; the door remained open to post-enforcement constitutional challenges. *Barmet* is a timing case, like *Baez.* All doors are closed to Czerkies if the government's jurisdictional concession is declined.

We do not think that the only kind of constitutional challenge not barred by a door-closing statute is a challenge to a statute or regulation, the kind of challenge involved in *Johnson v. Robison*, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). Among points emphasized in *Johnson* and equally applicable to the present case was the fact that the Veterans Administration was not competent to decide constitutional issues and that the history of the statute revealed no intention to foreclose constitutional challenges. The Supreme Court has read *Johnson* to stand for the broad principle that "where Congress

intends to preclude judicial review of constitutional claims its intent to do so must be clear ... in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988). The majority opinion in *Marozsan* does not read *Johnson* narrowly. 852 F.2d at 1472–77. The opinion does not describe, let alone characterize as systemic or general, Marozsan's specific constitutional claims. The opinion contains an *illustration* of those claims—a claim that the Veterans Administration employed a quota system that limited the number of benefits claims that could be granted, *id.* at 1471—but no suggestion that it makes a difference whether this is *typical* of Marozsan's claims. As an *a fortiori* example of a constitutional claim that would not be barred by the door-closing statute, the court instances a claim of racial discrimination in the grant of benefits. *Id.* at 1478. None of the grounds that *Marozsan* offers for the conclusion that constitutional claims are not barred has anything to do with whether the claim is of a systemic violation of the applicant's constitutional rights or of an idiosyncratic violation by a particular administrative law judge or other administrative officer, and the dissenting opinion was emphatic that Marozsan was not seeking any sort of systemic relief; he just wanted additional benefits for himself. *Id.* at 1487–89. Marozsan could not get the benefits decision as such reviewed, *id.* at 1471 n. 3, but only an order that his benefits be recomputed in an administrative proceeding free from constitutional error. Czerkies can get no more. But, like Marozsan, he is entitled to an administrative proceeding uncontaminated by a violation of the Constitution. Whether he had such a proceeding is a separate question, the question on the merits.

We have gone on at such length about *Marozsan* because we take seriously our duty to stand by our precedents—a duty the proper discharge of which requires, of course, that we get clear the scope of the precedent. *Marozsan* establishes that door-closing statutes do not shut off nonmonetary constitutional claims. But quite apart from

the authority of that decision, the fact that Czerkies is challenging the specific handling of his case by the administrative agency rather than mounting a general challenge to the procedures employed by the agency in all cases is of no moment. *Webster v. Doe, supra,* makes this clear. The distinction has it is true been emphasized in some *nonconstitutional* cases, such as *United States v. Erika, Inc.,* 456 U.S. 201, 102 S.Ct. 1650, 72 L.Ed.2d 12 (1982). The Supreme Court concluded in that case that Congress had intended to preclude judicial review of a class of individual Medicare claims. The plaintiff had lodged constitutional as well as nonconstitutional objections to the denial of its Medicare claim. The court of appeals had dismissed the constitutional objections as insubstantial, whereupon the plaintiff had abandoned them, and they played no role in the Supreme Court's consideration of the case. See *id.* at 206 n. 5, 102 S.Ct. at 1653 n. 5. The only issue decided by the Court was whether the plaintiff was entitled to judicial review of the nonconstitutional grounds.

We must not ignore relevant differences between the statutes involved in *Marozsan* and in the present case. It is possible that while Marozsan was not barred by the door-closing provision of *his* statute, Czerkies is by his different statute. The statute in *Marozsan* closed the door to judicial review of decisions "under any law administered by the Veterans' Administration providing benefits for veterans," and the due process clause is not such a law. A similar qualification is not explicit in the Federal Employees Compensation Act. But it may be implicit in the reference to the Secretary's action in awarding or denying compensation "under this [Act]." His interpretation and application of the Act are not to be questioned, but not his interpretation and application of the Constitution.

Examination of the history of the federal employees' compensation law reveals the limited scope of the door-closing provision. The original statute, enacted in 1916, had contained no provision with respect to judicial review. An amendment made in 1924 provided a limitation similar to, though less sweeping than, the one in the veterans' law

at issue in *Marozsan*. It said that "in the absence of fraud or mistake in mathematical calculation, the finding of facts in, and the decision of the commission [the predecessor to the Office of Workers' Compensation Programs] upon, the merits of any claim presented under or authorized by this Act if supported by competent evidence shall not be subject to review by any other administrative or accounting officer, employee, or agent of the United States." 43 Stat. 389 (1924). The present language came in by a further amendment in 1945. But it came in by a curious route. The statute of which this amendment was a part was concerned with a variety of special problems arising out of World War II. Among the most exotic was the problem of determining and administering compensation for injuries sustained by noncitizen employees of the federal government who were working outside the United States when injured. Section 4 of the Act of July 28, 1945, 59 Stat. 503–04 (1945), made provision for this problem mainly by authorizing the commission or its designees to base compensation awards on local laws or custom, and near the end tacked on the sentence about the commission's or designees' action being final and conclusive that appears in the current statute. Congress did not delete the language of the 1924 amendment, which appeared in another section of the existing statute, not the one amended by section 4 of the 1945 statute. So far as appears, the 1945 door-closing provision was intended to be limited to awards under section 4, the section of which it was the penultimate sentence—odd placement if the provision was intended to govern *all* claims under the compensation law. The deletion of the door-closing provision that had been added to the compensation act by the 1924 amendment did not occur until 1966, when, as part of a series of purely technical amendments, that provision was "omitted as included in" the sentence in section 4 of the 1945 statute. H.R.Rep. No. 901, 89th Cong., 1st Sess. 146 (1965); see 80 Stat. 545–46 (1966).

There is no indication at any stage in the evolution of the statute that Congress meant to enlarge the scope of the original limitation, let alone to curtail constitutional remedies. The only pertinent discussion is found in a letter from the commission's chairman which was made a part of the Senate report on the 1945 statute. The letter suggests that the door-closing provision in section 4 was intended to promote finality in the payment of, for example, blood money (!) in lieu of conventional compensation to foreign employees in societies in which failure to pay compensation in accordance with local custom would upset the employee and the local authorities. S.Rep. No. 421, 79th Cong., 1st Sess. 5–6 (1945). It does not appear that the provision was intended to apply to claims by U.S. citizens at all, and the substitution decades later of this provision for the more narrowly worded language of the 1924 amendment may well have been an accident. Constitutional rights should not hang by such threads.

■ Each statute must stand on its own two feet, but each is informed by the presumption already mentioned against slamming the courthouse door in the face of holders of constitutional claims. *Webster v. Doe, supra,* 486 U.S. at 603, 108 S.Ct. at 2053; *Gutierrez de Martinez v. Lamagno,* — U.S. —, —, 115 S.Ct. 2227, 2231, 132 L.Ed.2d 375 (1995); *Califano v. Sanders,* 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). These decisions put in perspective the Supreme Court's dictum in *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 779–80 and n. 13, 105 S.Ct. 1620, 1627 and n. 13, 84 L.Ed.2d 674 (1985); see also *Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 90, 112 S.Ct. 486, 493, 116 L.Ed.2d 405 (1991), that the statutes involved in Czerkies' case and Marozsan's "bar judicial review altogether." Neither *Lindahl* nor *Southwest Marine* was a constitutional case. When all that a claimant is seeking is benefits on the basis of an error of fact or law by the administering agency, judicial review is barred altogether.

■ The history of the Federal Employees Compensation Act provides no basis for rebutting the presumption of judicial review of constitutional claims. It is distasteful to suppose that an administrative agency would claim to receive from Congress by sheer inadvertence a license to ignore the Constitution. It is not surprising that the

government makes no such claim in this case. Our decision in *Marozsan* emphasized the presumption against denying all judicial remedies for violations of the Constitution by federal agencies, noting the anomalous consequences of such a denial. 852 F.2d at 1476–79. The anomalies would be even greater here because Marozsan· at least had an administrative appellate remedy; he could and did appeal the denial of his claim to the Board of Veterans' Appeals. Czerkies has no appellate remedies of any kind.

■ Consequences are not irrelevant to the interpretation of statutes. It would be passing odd to suppose that the Office of Workers' Compensation Programs could turn down the claim of an injured federal worker on racial or religious grounds, and the worker have no judicial remedy whatever, or even an administrative remedy. This is not a race or religion case, but are we to pick and choose among constitutional rights? That approach would have no footing in the statute. To hold that the district court had no jurisdiction would be to hold that the Department of Labor can discriminate with impunity against compensation claimants on grounds of race and religion. (So the government conceded in Marozsan's case. *Id.* at 1478.) Such a conclusion is sufficiently improbable to justify our invoking "the general rule honored even by interpretive literalists ... that if a literal reading produces an absurd result the interpreter is free (we would say compelled) to depart in the direction of sense." *Central States, Southeast & Southwest Areas Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.2d 1339, 1345 (7th Cir.1992). See *Burns v. United States*, 501 U.S. 129, 135–37, 111 S.Ct. 2182, 2185–86, 115 L.Ed.2d 123 (1991); *Green v. Bock Laundry Machine Co.*, 490 U.S. 504, 527, 109 S.Ct. 1981, 1994, 104 L.Ed.2d 557 (1989) (concurring opinion). We repeated this admonition recently in another en banc decision, this one a unanimous one. *United States v. Hudspeth*, 42 F.3d 1013, 1014 (7th Cir.1994) (en banc).

■ In neither *Marozsan* nor the present case would a conclusion that the claimant had been denied due process of law entitle him to benefits. It would entitle him only to a fair procedure for adjudicating his claim to benefits. The decision as to whether the statute administered by the agency in question entitled him to benefits would remain that of the agency—and not subject to judicial review. People are entitled to have their claims for benefits determined in proceedings that do not deny the claimants their federal constitutional rights. They can enforce that entitlement in federal court, as Czerkies has tried to do. To conclude the contrary would be to misinterpret the statute, overrule an en banc decision of this court despite the absence of any intervening change of circumstances, create an intercircuit conflict, and invite federal administrative agencies to flout the Constitution. Confining constitutional challenges to systemic or general rules or practices of the agencies would lighten the judicial workload—but not enough to outweigh the interest in allowing persons *some* forum in which to assert their constitutional rights. Suits of the kind brought by Marozsan and Czerkies have been remarkably few despite favorable precedent, and when the casting of a claim in constitutional terms is a mere "rhetorical cover" for a claim for benefits that the door-closing statutes are intended to block, the suit fails, as we are about to see.

■ We hold that the district court had jurisdiction to consider Czerkies' constitutional claim, and we proceed to the question whether the district judge was right to dismiss Czerkies' suit on the ground that his constitutional claim was insubstantial. The judge had before him not only the complaint but also two supplementary statements by Czerkies in response to the government's filings. The complaint and supplementary statements are handwritten documents prepared without assistance of counsel, and every indulgence must be granted. The documents contain sufficient detail, however, to indicate the character of Czerkies' grievance. One searches these documents in vain for any indication of some deficiency in the procedures by which Czerkies' claim was processed, except for a contention, which could not found a substantial due process claim, that he had been prevented from cross-examining his supervisor. The documents are

replete with assertions that the claim was denied without due process of law, but what Czerkies appears to mean by this is that the wrongful denial of a claim is a denial of due process of law. As he puts it in one of his submissions, "To deprive a disabled person of appropriate medical [care or benefits] which the person was and or is entitled to by the government is completely in defiance of both the letter and spirit of the U.S. Constitution." This is in the nature of a substantive due process claim: Mr. Czerkies has a substantive entitlement of which the government has deprived him. Such a claim has no merit. The government does not violate the Constitution every time it mistakenly denies a claim for benefits. On appeal, Czerkies, through the able lawyer whom we asked to present argument on his behalf as amicus curiae (Czerkies declined our offer to appoint counsel for him), now argues that Czerkies was "front desked"—that is, his employing agency, the Postal Service, refused to accept his claim for filing. There is no hint of this theory of a due process violation in the complaint or other documents filed in the district court; it comes too late.

This is a case of a claim for benefits "cloaked in constitutional terms." Czerkies has affixed the constitutional label to a garden-variety claim for benefits plainly barred by 5 U.S.C. § 8128(b). The judgment dismissing his suit is therefore

AFFIRMED.

EASTERBROOK, Circuit Judge, with whom MANION and KANNE, Circuit Judges, join, concurring in the judgment.

When dealing with laws defining their authority, courts have a special duty to be scrupulous—and to be modest. Judges often justify their role by pointing to the need for a check on other political actors. Statutes specifying the jurisdiction of courts are the other actors' checks on judges. Just as we insist that the Legislative and Executive Branches respect the constitutional checks on their power, so we must respect the constitutional checks on ours—especially because judges, unlike the other branches of government, assert that they possess the last word on the scope of their own powers. To

evade laws limiting jurisdiction is to usurp power.

Congress has asserted its constitutional checking power by forbidding judicial review of federal workers' compensation decisions:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—
>
> (1) final and conclusive for all purposes and with respect to all questions of law or fact; and
>
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b). This statute does not distinguish among reasons for seeking review; it makes the administrative decision final. In *Lindahl v. Office of Personnel Management,* 470 U.S. 768, 779–80 & n. 13, 105 S.Ct. 1620, 1627 & n. 13, 84 L.Ed.2d 674 (1985), the Supreme Court gave § 8128(b) as an example of the "unambiguous and comprehensive" language that Congress uses "when [it] intends to bar judicial review altogether". This description was reiterated in *Southwest Marine, Inc. v. Gizoni,* 502 U.S. 81, 90, 112 S.Ct. 486, 493, 116 L.Ed.2d 405 (1991). It is altogether apt. If § 8128(b)(1) were not enough, § 8128(b)(2) adds: "We really mean it!"

The amicus curiae contends that we should whittle away at § 8128(b) to avoid a constitutional problem. There is none to avoid. Long ago the Supreme Court held that, when Congress creates a right to recover money from the United States, it may "provide an administrative remedy and make it exclusive." *Dismuke v. United States,* 297 U.S. 167, 172, 56 S.Ct. 400, 403, 80 L.Ed. 561 (1936). Accord, *United States v. Babcock,* 250 U.S. 328, 331, 39 S.Ct. 464, 465, 63 L.Ed. 1011 (1919). That is what Congress did in § 8128(b). It is within the legislative power. *Blanc v. United States,* 244 F.2d 708 (2d Cir.1957); *Hancock v. Mitchell,* 231 F.2d 652 (3d Cir.1956); *Calderon v. Tobin,* 187 F.2d 514 (D.C.Cir.1951).

Any argument that there is constitutional-claim exception to statutes like § 8128(b) cannot be traced to doubts about the power of Congress to restrict the jurisdiction of

district courts—for until 1875 the inferior courts lacked any general federal-question jurisdiction, and until 1980 the federal-question jurisdiction was qualified by an amount-in-controversy requirement. No one thinks the Judiciary Act of 1789 a colossal violation of Article III on this account. Sovereign immunity, too, limits judicial competence; what role judges are to play is entirely in the hands of Congress, see *FDIC v. Meyer*, —— U.S. ——, —— – ——, 114 S.Ct. 996, 1004–06, 127 L.Ed.2d 308 (1994); the obligation to respect legislative decisions is not diminished by the constitutional basis of the claim (*Meyer* and many other sovereign-immunity cases deal with claims arising under the Constitution); and § 8128(b) invokes that immunity by restricting grants of judicial power that appear elsewhere in the United States Code.

The proposition that a law making an administrative decision final can coexist with some judicial role has its provenance in *Johnson v. Robison*, 415 U.S. 361, 366–74, 94 S.Ct. 1160, 1165–69, 39 L.Ed.2d 389 (1974), and *Traynor v. Turnage*, 485 U.S. 535, 541–45, 108 S.Ct. 1372, 1378–80, 99 L.Ed.2d 618 (1988). These cases dealt with 38 U.S.C. § 211(a), which limited review of veterans' benefits awards. *Johnson* and *Traynor* involved challenges, not to individual decisions on veterans' claims, but to structural components of the system—in *Johnson*, to the constitutionality of the statute itself; in *Traynor*, to the statutory validity of a regulation. In each case the Court concluded that § 211(a) did not bar review because the statute concerned only decisions of the Administrator. Section 211(a) provided:

> [T]he decisions of the Administrator on any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans ... shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decision by an action in the nature of mandamus or otherwise.

Section 211(a) was repealed as part of the reorganization that created a Court of Veterans Appeals under Article I of the Constitution. The new court has "exclusive jurisdiction" to review decisions concerning veterans'

benefits. 38 U.S.C. (1991 Supp.) § 7252(a). See generally 38 U.S.C. (1991 Supp.) §§ 7251–92. A new 38 U.S.C. (1991 Supp.) § 511(a) limits the jurisdiction of the Article III courts in a way comparable to the former § 211(a).

A contest to the statute in *Johnson* was not a disagreement with a decision of the Administrator; and a challenge to a regulation did not raise "any question of law or fact under any law administered by the Veterans' Administration providing benefits for veterans". As the Court saw things, *Johnson* raised a claim "under" the Constitution rather than "under any law administered by the Veterans' Administration providing benefits for veterans", and *Traynor* raised a claim under the Rehabilitation Act. But the Court did not doubt that § 211(a) had a core of application: "A decision of law or fact 'under' a statute is made by the Administrator in the interpretation or application of a particular provision of the statute to a particular set of facts." 415 U.S. at 367, 94 S.Ct. at 1166.

In *Walters v. National Ass'n of Radiation Survivors*, 473 U.S. 305, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985), the Court wrote that Johnson stands for the principle that "district courts have jurisdiction to entertain constitutional attacks on the operation of the *claims system*." *Id.* at 311 n. 3, 105 S.Ct. at 3184 n. 3 (emphasis added). *Traynor* observed that § 211(a) dealt only with "decisions of the Administrator", and that regulations governing the whole program are not such "decisions". *Johnson, Walters,* and *Traynor* all distinguish systemic challenges from case-specific decisions—a conclusion that the Court thought backed up by the legislative history, which showed that Congress did not want the courts messing in the administration of the program or exposed to the high volume of claims entailed by case-specific inquiries. None of the three cases distinguishes constitutional from statutory theories; the claim in *Traynor* was based on a statute. The distinction is between systemic and individual challenges. The Court has analyzed similar statutory schemes in the same way. Compare *United States v. Erika, Inc.*, 456 U.S. 201, 205–06 & n. 5, 102 S.Ct. 1650, 1652–53 & n. 5, 72 L.Ed.2d 12 (1982)

(no review of individual benefits decisions under Part B of the Medicare program, even for constitutional objections), with *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986) (reviewing regulations implementing Part B of the Medicare program).

*Marozsan v. United States*, 852 F.2d 1469 (7th Cir.1988) (en banc), is cut from similar cloth. Marozsan had disclaimed any desire to have us review the award in his case (*id.* at 1471, quoting from his brief). We treated the suit as a challenge to the procedures the VA used in all cases, rather than as a claim of any error specific to his case. To implement this distinction, we held that Marozsan's suit must be dismissed to the extent he was trying indirectly to obtain review of the decision in his own case. *Id.* at 1471 n. 3 ("Section 211(a) clearly precludes our review of the Administrator's decision to set benefits and disability levels" in particular cases, and 28 U.S.C. § 1346(a)(2) bars review in the district courts of monetary claims exceeding $10,000). Today that limitation vanishes. The majority extends *Marozsan* to individual claims under a different statute, with broader language, and in the process casts it free of its precursors in the Supreme Court. My colleagues announce a general constitutional-argument "exception" to statutes that admit of no exceptions and proceed to review a decision in an individual benefits case. The majority does not interpret the language of § 8128(b); it bypasses the language of § 8128(b). Likewise § 1346(a)(2) escapes mention, although Czerkies' demand for punitive damages makes it relevant.

"The presumption favoring judicial review of administrative action is just that—a presumption. This presumption, like all presumptions used in interpreting statutes, may be overcome by specific language". *Block v. Community Nutrition Institute*, 467 U.S. 340, 349, 104 S.Ct. 2450, 2455, 81 L.Ed.2d 270 (1984). See also, e.g., *Thunder Basin Coal Co. v. Reich*, —— U.S. ——, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994); *Dalton v. Specter*, —— U.S. ——, 114 S.Ct. 1719, 128 L.Ed.2d 497 (1994); *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Section 8128(b) is as specific as they come.

So the Supreme Court recognized in *Lindahl* and *Southwest Marine*. Cases such as *Webster v. Doe*, 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), which the majority emphasizes, articulate the presumption of judicial review but do not hint that a law as sweeping as § 8128(b) is inadequate to overcome it. The statute on which the agency relied in *Webster* permitted the Director of the CIA to fire employees "whenever he shall deem such termination necessary or advisable in the interests of the United States" (50 U.S.C. § 403(c)); it was silent about the judicial role. Because the APA does not apply to any decision "committed to agency discretion by law", 5 U.S.C. § 701(a)(2), it did not authorize review of the question whether the discharge was "necessary or advisable"; but § 403(c) did not create any discretion concerning constitutional interpretation and therefore did not affect review otherwise authorized by the APA on that subject. Section 8128(b) has an entirely different structure; it forbids review of the decision itself rather than committing one or another issue to administrative discretion. If § 8128(b) is not enough to overcome the presumption, what is?

Section 8128(b) cannot be dodged on the theory that to review the procedures the Department of Labor used to reach a decision is not to review the "action of the Secretary or his designee in allowing or denying a payment." Judges do not review issues in administrative cases; they review final administrative decisions. *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980). Error at a step leading to a decision might vitiate the decision; but it is the decision rather than the process that is before the court. That is the point of *Heckler v. Ringer*, 466 U.S. 602, 613–16, 104 S.Ct. 2013, 2020–22, 80 L.Ed.2d 622 (1984), which rebuffed an effort to separate Medicare claims into substantive and procedural components in order to avoid a review-preclusion statute. An objection to the process the agency used to make a decision is an objection to that decision, the Court held, and therefore is covered by the statute limiting review of that decision. If the Commissioner of Social Security rejects a claim for disability benefits, a suit contending that the

Constitution forbids reliance on hearsay seeks review of the decision denying benefits. If the Supreme Court had agreed with that contention in *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), it would have ordered a remand for another hearing. My colleagues claim the right to do exactly that with a workers' compensation decision, despite the vast difference between 42 U.S.C. § 405(g) and 5 U.S.C. § 8128(b). And if review of the procedures used to make a benefits decision is not review of the "action of the Secretary", provided the remand calls for a new hearing rather than the payment of money, then a court is equally within its power to entertain arguments based on statutes (including the APA). Neither the statute nor the majority's understanding of what it means to review an "action of the Secretary" distinguishes according to the source of the legal theory used to call the administrative process into question.

Practical as well as textual and historical roots support *Johnson's* distinction between systemic and individual decisions. A single judicial opinion can settle the validity of a statute or regulation. Reviewing compensation decisions is a retail business, as courts acquainted with black lung and social security disability cases need not be reminded. When Congress attempts to curtail review of its own handiwork, judges are suspicious: What is the legislature up to, and must it be allowed to get away with what may be an inroad on the Constitution? When Congress directs high-volume business to a specialized tribunal such as the Employees' Compensation Appeals Board or the Court of Veterans Appeals, it is conserving judicial time for other litigants; there is no ground of suspicion and no occasion for creative readings of the law.

A constitutional exception to a statute such as § 8128(b) could create the very high-volume litigation that Congress wanted to avoid. Consider the ubiquity of constitutional arguments in modern litigation: instead of saying that the adverse party did not comply with its discovery obligations under Fed.R.Civ.P. 36, a lawyer often insists that his client was denied due process by the lack of access to evidence. Instead of wrestling with the complexities of the hearsay rule, a lawyer is apt to insist that a decision admitting or excluding evidence violated the due process clause. Not only lawyers but also courts have developed ways to treat violations of statutes and rules as violations of the Constitution, see *Thomas v. Peters*, 48 F.3d 1000, 1008–11 (7th Cir.1995) (concurring opinion); *Bates v. McCaughtry*, 934 F.2d 99 (7th Cir.1991), despite the drumbeat of reminders that they differ. E.g., *Gilmore v. Taylor*, 508 U.S. 333, ———–———, 113 S.Ct. 2112, 2117–19, 124 L.Ed.2d 306 (1993); *Nordlinger v. Hahn*, 505 U.S. 1, 16 n. 8, 112 S.Ct. 2326, 2335 n. 8, 120 L.Ed.2d 1 (1992); *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 202, 109 S.Ct. 998, 1006, 103 L.Ed.2d 249 (1989); *Archie v. Racine*, 847 F.2d 1211, 1215–18 (7th Cir.1988) (en banc). Rules of procedure bristle with details, which pro se litigants (and many lawyers) do not master; they turn to the majestic generalities of the Constitution, just as Czerkies has done. If this gives entrée, however, then § 8128(b) is undone. My colleagues recognize that Czerkies' own arguments are standard administrative-law contentions in constitutional garb. Stripping away the disguise is scarcely different from resolving the suit on the merits; and if Congress possesses the power to forbid the latter exercise it has the power to forbid the same thing with constitutional persiflage.

Slippery-slope arguments do not aid in the interpretation of § 8128(b). One could say that, unless constitutional claims are reviewable, the Secretary of Labor may pursue a program of religious discrimination, or may deny workers' compensation claims by Republicans while doling out funds to Democrats. A person possessed of an unreviewable power may abuse it. Does it follow that any given power *is* reviewable? This argument could be applied equally to judges, who not only can abuse their powers but also have done so on occasion. Yet there is no principle that the possibility of error always leads to an extra layer of review. A practice of pardoning only Democrats or appointing only Christians to federal office would violate the Constitution, but the remedy lies in the Senate rather than the courts. If the Secretary of Labor, operating under a law that gives

him the final say, violates the Constitution, he should be impeached and removed from office. Jurisdiction—that is, the power to decide—is an initial hurdle in litigation; courts decide cases within their jurisdiction rather than asserting jurisdiction because they believe that a substantive claim ought to be considered. See *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974). Congress is entitled to believe that the probability of unconstitutional conduct in a class of cases is sufficiently low that a judicial search for it would come at too high a cost to other interests. Section 8128(b) expresses such a judgment, which we must respect.

In reaching a contrary conclusion, the majority relies on cases in other circuits that articulate a constitutional-contention exception to § 8128(b), principally *Rodrigues v. Donovan*, 769 F.2d 1344, 1347–48 (9th Cir. 1985), and *Paluca v. Secretary of Labor*, 813 F.2d 524, 526–27 (1st Cir.1987). Neither case is sound. *Rodrigues* said that a constitutional challenge to the Secretary's procedures is not "really" a challenge to the award of benefits and therefore falls outside § 8128(b). This is word play, and it is inconsistent with *Ringer*. *Rodrigues* gave *Ringer* a "cf." citation; the correct signal would have been "contra." *Ringer* had reversed the ninth circuit, which appears to be waging a rear-guard action. *Paluca* took a different line. It concluded that § 8128(b) is "like" § 211(a) and should be governed by *Johnson*. For reasons I have already given it does not follow that decisions in individual cases are reviewable. Three other decisions call for brief comment. *Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir.1988), which may be read as containing dicta taking *Paluca*'s view, was actually about a request for attorneys' fees under the EAJA rather than an effort to obtain review of a workers' compensation decision. *Woodruff v. Department of Labor*, 954 F.2d 634, 639 (11th Cir.1992), asserts jurisdiction to hear constitutional arguments without quoting § 8128(b) or giving a reason. And *Brumley v. Department of Labor*, 28 F.3d 746, 747 (8th Cir.1994), reports accurately that "it has been held that" § 8128(b) does not apply to constitutional (or statutory!) arguments but does not address the

question further, for the plaintiff had not made a constitutional argument.

If the best argument for entertaining Czerkies' arguments is that § 8128(b) is like § 211(a), then the best argument against cases such as *Rodrigues* and *Paluca* is that those courts hold very different views about § 211(a)—for both the first and ninth circuits concluded that § 211(a) did *not* permit review of individual veterans' benefits decisions, even when the veteran advanced a constitutional argument. See *Milliken v. Gleason*, 332 F.2d 122 (1st Cir.1964); *Ross v. United States*, 462 F.2d 618 (9th Cir.1972); *Rosen v. Walters*, 719 F.2d 1422, 1423 (9th Cir.1983). Other circuits likewise held that § 211(a) forbade review of individual veterans' cases even when the veteran contended that the VA violated the Constitution in the course of resolving his claim. E.g., *Higgins v. Kelley*, 824 F.2d 690 (8th Cir.1987); *Pappanikoloaou v. Administrator of Veterans Administration*, 762 F.2d 8 (2d Cir.1985); *Anderson v. Veterans Administration*, 559 F.2d 935 (5th Cir.1977); *de Rodulfa v. United States*, 461 F.2d 1240, 1257–58 (D.C.Cir. 1972). Since the repeal of § 211(a) and its replacement by § 511(a), the second circuit has reiterated its conclusion that claimants may not obtain review in the district courts of individual benefits decisions. *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 2245, 132 L.Ed.2d 254 (1995). When opposing the petition for certiorari in *Sugrue*, the Solicitor General wrote (Br. in Opp. at 7–8):

> Nor did the district court have jurisdiction over petitioner's due process claims. Petitioner alleges that the failure to perform a neurological examination and the failure to refer to regulations when denying him full disability benefits constituted violations of due process because VA regulations were violated and the violation impeded an accurate evaluation of his claim. Further, petitioner argues that the Secretary effected a taking by denying his claim. Whatever the merits of those claims, they are in essence challenges to the application of "particular provision[s] * * * to a particular set of facts" and this Court has made clear that such challenges are precluded.

*Johnson v. Robison,* 415 U.S. 361, 367 [94 S.Ct. 1160, 1165, 39 L.Ed.2d 389] (1974); see *Walters v. National Ass'n of Radiation Survivors,* 473 U.S. 305, 311 n. 3 [105 S.Ct. 3180, 3184 n. 3, 87 L.Ed.2d 220] (1985) (jurisdiction available for "attacks on the operation of the claims *system* [ ]") (emphasis added).

This is a correct statement of the Supreme Court's approach to this subject, which the Civil Division's brief in this case abandons. The ability to dress ordinary legal arguments in constitutional garb—as Czerkies and Sugrue alike have done—shows why the distinction between systematic and personal challenges is important. The need for judges to respect limits on their own power shows why the distinction is vital. I wish my colleagues saw things the same way.