**Opinions of the United States Court of Appeals for the Third Circuit**



7-2-1999

# McDougal-Saddler v. Secretary Labor

Precedential or Non-Precedential:

Docket 98-1068

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"McDougal-Saddler v. Secretary Labor" (1999). *1999 Decisions.* Paper 189.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/189

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 2, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1068

CLEOPATRA McDOUGAL-SADDLER

        Appellant

v.

ALEXIS M. HERMAN, Secretary,
U.S. Department of Labor,

        Appellee

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 97-1908)
District Judge: Honorable Jan E. DuBois

Argued October 8, 1998

Before: McKEE, RENDELL, Circuit Judges, and
DEBEVOISE, Senior District Judge*

[Filed: July 2, 1999]

Jeffrey P. Zeelander [Argued]
1608 Walnut Street,
Suite 1300
Philadelphia, PA 19103-5407

_____

*Honorable Dickinson R. Debevoise, United States Senior District Judge
for the District of New Jersey, sitting by designation.

Richard B. Cappalli
Klein Hall
1719 N. Broad Street
Philadelphia, PA 19122

 Counsel for Appellants

Karen B. Kracov [Argued]
Assistant United States Attorney

Michael R. Stiles
United States Attorney

James G. Sheehan
Assistant United States Attorney
Chief, Civil Division

Nadine M. Overton
Assistant United States Attorney

615 Chestnut Street, Suite 1250
Philadelphia, PA 19106-4476

 Counsel for Appellees

OPINION OF THE COURT

DEBEVOISE, Senior District Judge:

Appellant, McDougal-Saddler, appeals the district court's order granting the motion of Cynthia Metzler, Acting Secretary, United States Department of Labor ("DOL")1 to dismiss the complaint for lack of subject matter jurisdiction. We have jurisdiction over this appeal pursuant to 28 U.S.C. S 1291.

In an earlier opinion we affirmed the district court on the ground that McDougal-Saddler lacked standing to bring this action. Upon her petition for panel rehearing we vacated that opinion and asked for supplemental briefing. We will now affirm, holding that by virtue of 5 U.S.C. S 8128(b) the district court did not have jurisdiction.

_____

1. Alexis M. Herman is presently United States Secretary of Labor.

I. The Facts

On May 14, 1982 McDougal-Saddler, then a 39-year old
U.S. Postal Service distribution clerk, filed a claim with the
Office of Workers' Compensation Program ("OWCP") for an
injury to her back, upper neck and shoulder sustained on
May 8 when handling trays of mail. On June 24 the OWCP
began payment of compensation for temporary total
disability. Dr. David S. Schwartz, a Board-certified internist
and cardiologist, began treating McDougal-Saddler on
August and diagnosed cervical and lumbosacral strains. He
found his patient to be totally disabled.

After a February 1985 fitness-for-duty evaluation,
McDougal-Saddler was offered and accepted reemployment
as a distribution clerk with limited duties. She returned to
work on March 31, 1985 but again stopped working on
April 5, stating that because of pain in her neck, shoulder,
arm and back she could not continue. Dr. Schwartz
examined her the next day; he diagnosed cervical and
lumbar strain and stated she was totally disabled.

On May 7, McDougal-Saddler filed a claim for a
traumatic injury to her neck, shoulders and upper and
lower back sustained on April 5 when casing mail. On May
20 the OWCP again began payment of compensation for
temporary total disability. In a June 17, 1985 report Dr.
Schwartz diagnosed cervical radiculopathy. In a May 22,
1986 report he diagnosed chronic pain syndrome including
chronic lumbosacral strain and chronic cervical strain. In
an April 10, 1987 report Dr. Schwartz wrote, "Because of
chronic debilitating pain and limited range of motion due to
muscle stiffness and spasm, despite intensive physical
therapy and medication, [McDougal-Saddler] is totally
disabled from work at this time and for the near indefinite
future."

The OWCP referred McDougal-Saddler to Dr. William H.
Simon, a Board-certified orthopedic surgeon for a second
opinion. In a May 4, 1987 report Dr. Simon diagnosed
cervical and lumbar discogenic syndrome with cervical and
lumbar nerve root irritation. He concluded that "[t]here is
no evidence that she sustained any acute injury that is
responsible for this but that she has a slowly developing

3

degenerative condition which limits the amount of work that she can do."

On December 31, 1987 the OWCP notified McDougal-Saddler that it proposed to terminate her compensation on the ground that her disability resulting from her employment injuries had ceased. In response McDougal-Saddler submitted another report of Dr. Schwartz in which he stated that her symptoms were "specifically due" to her May 8, 1982 injury and that her April 5, 1985 injury "added to her previous cervical and lumbosacral strain."

Effective November 20, 1988 the OWCP terminated McDougal-Saddler's compensation on the ground that the weight of the medical evidence established that her disability from her employment injuries ceased by that date. After a hearing an OWCP hearing representative found in a February 21, 1989 decision that McDougal-Saddler had not been afforded due process because she had not been provided with a copy of Dr. Simon's May 4, 1987 report. The hearing representative remanded the case for reinstatement of compensation and a re-evaluation by Dr. Simon.

At Dr. Simon's request a Board-certified radiologist performed a computerized tomography scan of McDougal-Saddler's lumbosacral and cervical spine. On the basis of the resulting report Dr. Simon revised his original opinion, stating in a November 15, 1989 report, "we now have objective evidence that this patient has cervical discogenic abnormalities beyond degenerative changes both in her neck and back."

Based on the entirety of the reports which had been submitted to it, the OWCP found that there was a conflict of medical opinion. On October 22, 1991, it referred the case to Dr. John T. Williams, a Board-certified orthopedic surgeon, to resolve the conflict. The OWCP purported to act pursuant to the provisions of 5 U.S.C. S 8123(a), which provides: "If there is disagreement between the physician making the examination for the United States [Dr. Simon] and the physician of the employee [Dr. Schwartz], the Secretary shall appoint a third physician who shall make an examination." According to the Federal (FECA)

4

Procedure Manual, "The [Employees' Compensation Appeals Board] has stated that `an impartial specialist's report is entitled to greater weight than other evidence of record as long as his conclusion is not vague, speculative or equivocal and is supported by substantial medical reasoning'." Part Two, Chapter 2-810.11 c.(2).

Dr. Williams conducted a physical examination of McDougal-Saddler, reviewed the medical records and in a March 4, 1992 report stated, among other things, that "what we are seeing here is the progression of degenerative joint and degenerative disc disease over a period of approximately seven years secondary to the normal wear and tear on the body and the aging process. The work-related injury did not cause the degenerative pathology first noted in 1987."

The OWCP terminated McDougal-Saddler's compensation on September 20, 1992, concluding that the weight of the medical evidence, represented by Dr. Williams's reports, established that the effects of her April 5, 1985 and May 11, 1982 injuries had ceased. On appeal an OWCP hearing representative found in a November 24, 1993 decision that the opinion of Dr. Williams, the impartial medical specialist, resolved the conflict of medical opinion and established that the effects of the 1982 and 1985 injuries had ceased by September 20, 1992. By letter dated February 27, 1995 McDougal-Saddler requested reconsideration, contending, among other things, that Dr. Williams was not an impartial medical specialist entitled to special weight because Dr. Simon's November 15, 1989 report did not conflict with the conclusions of Dr. Schwartz. The OWCP denied the request for reconsideration, and McDougal-Saddler appealed to the Employees' Compensation Appeals Board ("ECAB").

The ECAB authored a detailed opinion. It weighed the evidence which had been developed during the years following McDougal-Saddler's original injury in May 1982. It contrasted the qualifications of Drs. Williams and Schwartz and analyzed the basis and reasoning of their respective reports. It found "that the weight of the medical evidence establishes that [McDougal-Saddler's] disability related to her May 8, 1982 and April 5, 1985 employment injuries ended by September 20, 1992."

The ECAB, however, agreed with McDougal-Saddler's contention that Dr. Williams was not an impartial medical specialist because at the time of his appointment there was no conflict of medical opinion.

The consequence which the ECAB attributed to the denial of impartial medical specialist status to Dr. Williams was ". . . the reports of Dr. Williams are thus not entitled to the special weight afforded to the opinion of an impartial medical specialist resolving a conflict of medical opinion . . ." The ECAB treated Dr. Williams's reports in the same manner as it treated the other medical evidence, giving it no special deference. It weighed the totality of the evidence and on March 20, 1996 affirmed the decision of the OWCP. Thereafter it denied a petition for reconsideration.

McDougal-Saddler contends that the procedures leading to the denial of her benefits were in violation of the clear mandate of 5 U.S.C. S 8123(a) which provides in relevant part:

> If there is disagreement between the physician making the examination for the United States and the physician of the employee, the Secretary shall appoint a third physician who shall make an examination. (emphasis added).

This mandate is implemented by regulation:

> If there should be disagreement between the physician making the examination on the part of the United States and the injured employee's physician, the Office shall appoint a third physician, qualified in the appropriate specialty, who shall make an examination . . . . (emphasis added).

20 C.F.R. S 10.408.

The ECAB's opinion held that Dr. Williams was not an impartial expert because there was no conflict of medical opinion at the time his opinion was sought. Thus the "disagreement between the physician making the examination for the United States and the physician of the employee" arose at the time Dr. Williams rendered his opinion. Notwithstanding the dictate of S 8123(a), the ECAB did not require appointment of "a third physician". Instead

6

it weighed the evidence before it, affirmed the decision of the OWCP terminating compensation and later denied a petition for reconsideration.

Notwithstanding the explicit language of S 8123(a) and implementing regulations, OWCP weighs the medical reports when determining whether to appoint a third physician. In its Federal (FECA) Procedural Manual and in practice, according to McDougal-Saddler, OWCP appoints a third physician only "where the analysis of the evidence demonstrates conflicting opinions or conclusions which are supported almost equally." Generally "[c]areful analysis of the medical evidence should allow for resolution of most issues without resorting to a referee or `impartial' specialist." (Federal (FECA) Procedure Manual, Part Two, Chapter 2-810-11 a, App. 53).

It is difficult to square this weighing process with the S 8123(a) mandate that "[i]f there is disagreement [between the government and employee physicians] the Secretary shall appoint a third physician." (emphasis added).

McDougal-Saddler filed in the district court a complaint and petition for declaratory and injunctive relief, alleging that DOL has adopted procedures that violate the statutory directive regarding the appointment of a third physician.

II. The District Court Opinion

The DOL moved to dismiss McDougal-Saddler's complaint for lack of subject matter jurisdiction, relying on 5 U.S.C. S 8128(b) which provides:

> (b) The action of the Secretary or his designee in allowing or denying a payment under this subchapter is--
>
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

McDougal-Saddler urged in opposition to the motion to dismiss that two exceptions to the prohibition on judicial

7

review applied. She asserted that the bar did not apply because she presented evidence of a cognizable constitutional violation. She asserted further that the bar did not apply because the actions of the DOL violated a clear statutory mandate.

The district court rejected McDougal–Saddler's constitutional claims. It held that FECA PM 2–810–11a providing for a weighing of the medical evidence before appointing a third physician was simply an interpretive rule clarifying the word "disagreement" in S 8123(a) and therefore did not require public notice or a public comment period to be valid. Its application to McDougal–Saddler did not violate her due process rights or otherwise create a cognizable constitutional claim. McDougal–Saddler does not challenge this ruling in her appeal.

The district court assumed for the purposes of its decision that a violation of a clear statutory mandate creates subject matter jurisdiction for a court to hear a case brought under FECA. It found, however, that because the ECAB interpretation was plausible, there was no such violation, holding:

> The Court concludes that FECA PM 2–810 instructs claims examiners in how to determine whether a "disagreement" between physicians exists, and that defendant's interpretation of 5 U.S.C. S 8123(a), using FECA PM 2–810, is plausible. Under that interpretation, it was appropriate for ECAB to decide plaintiff's claim based on the weight of the medical evidence. ECAB did not violate a clear statutory mandate in evaluating plaintiff 's claim. The statute did not, under the facts presented, require ECAB to remand the case for the appointment of an independent physician to conduct an examination of plaintiff.

The court granted DOL's motion to dismiss.

III. Discussion

The statutory provision at issue here provides that "[t]he action of the Secretary or his designee in allowing or

8

denying a payment is – (1) final and conclusive for all purposes with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a Court by mandamus or otherwise." 5 U.S.C. S 8128(b). Although Congress is ordinarily presumed to have intended judicial review of agency action, "Congress is absolutely free to limit the extent to which it consents to suit" against the United States or its instrumentalities. Clinton County Com'rs v. United States E.P.A., 116 F.3d 1018, 1025 (3d Cir. 1997) cert. denied sub nom. Arrest the Incinerator Remediation (A.I.R.), Inc., 118 S.Ct. 687. 139 L.Ed.2d 633 (1998).

The starting point for the determination of Congress's intent is the language of the statute. See New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1498 (3d Cir. 1996). In the present case there can hardly be plainer language than that which S 8128(b) employs. The Supreme Court has referred to S 8128(b) as an example of language that Congress uses when it "intends to bar judicial review altogether." Lindahl v. Office of Personnel Management, 470 U.S. 768, 779–780, 105 S.Ct. 1620, 84 L.Ed.2d 674 (1985).

The question whether a statute precludes judicial review "is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved." Block v. Community Nutrition Institute, 467 U.S. 340, 345, 104 S.Ct. 2450, 81 L.Ed.2d 270 (1984). Both McDougal–Saddler and the DOL have reviewed the legislative history of FECA and in particular the evolution of S 8128(b). Each side argues that the legislative history supports its position.

In Czerkies v. United States Dep't of Labor, 73 F.3d 1435 (7th Cir. 1996), Chief Judge Posner examined the same history and found that it "reveals the limited scope of the door-closing provision." Id. at 1440, and that adoption of the provision "may well have been an accident." Id. at 1441. That case, however, concerned a constitutional challenge to action of the DOL. The court held that "[t]he history of the Federal Employees Compensation Act provides no basis for rebutting the presumption of judicial review of

9

constitutional claims. It is distasteful to suppose that an administrative agency would claim to receive from Congress by sheer inadvertence a license to ignore the Constitution." Id. at 1441. Although the district court had jurisdiction to hear Czerkies' constitutional claim, the Supreme Court affirmed the judgment dismissing the suit because the constitutional claim was insubstantial.

Unlike Czerkies the present appeal does not involve a constitutional claim. The district court held that adoption and compliance with the provisions in the procedural Manual providing for a weighing of the medical evidence did not violate McDougal–Saddler's due process rights or otherwise create a cognizable constitutional claim. McDougal–Saddler does not challenge that conclusion on this appeal, and we are not required to decide whether S 8128(b) would deprive a district court of jurisdiction to hear such a claim.

It is necessary to decide whether an asserted violation of a clear statutory mandate constitutes a second exception to the statutory bar. We conclude that there is nothing in the legislative history which would permit a departure from the unequivocal language of S 8123(b) to review such an asserted violation, and that the decisions of our court preclude such a departure.

McDougal–Saddler relies primarily upon two United States Supreme Court cases, Oestereich v. Selective Serv. Sys., 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) and Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958). In Oestereich the draft law gave a "plain and unequivocal" service exemption to students preparing for the ministry. Notwithstanding the exemption, Oestereich's draft board reclassified him I–A as a form of discipline when he returned his registration certificate to protest the Vietnam War. Oestereich brought suit in the United States District Court to restrain his induction. Unambiguously S 10(b)(3) of the Military Service Act of 1967 provided that "No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or

10

negatively to an order to report for induction . . .." The Court declined to apply S 10(b)(3) literally, holding that "[s]ince the exemption granted divinity students is plain and unequivocal . . . pre-induction judicial review is not precluded . . . ." 393 U.S. at 238-239.

In Leedom the National Labor Relations Board included both professional and nonprofessional employees in a collective bargaining unit in clear violation of the National Labor Relations Act. The association representing the professional employees brought suit in the United States District Court challenging the NLRB's action. The NLRA permitted judicial review of a Board certification order by a petition for enforcement or review of an order made under S 10(c) of the Act restraining an unfair labor practice; the Board argued that its order was not otherwise subject to judicial review. The Court held that the review provisions of the NLRA did not preclude an action "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." 358 U.S. at 188.

More recent decisions of the Supreme Court and of our Court establish that Oestereich has not been extended beyond its particular facts and that the Kyne "clear statutory mandate" exception will not be applied when the statute provides clear and convincing evidence that Congress intended to deny district court jurisdiction. In Board of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc., 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991), MCorp sought to enjoin administrative proceedings instituted against it by the Federal Reserve Board on the ground that the proceedings were in excess of the Board's authority. It relied upon the Kyne doctrine to overcome the statutory bar to district court jurisdiction. The Court advanced two reasons for applying the statutory bar notwithstanding a claim of violation of a clear statutory mandate. First, MCorp had an alternative means of review. Second:

> . . . [a] related factor distinguishing this litigation from Kyne is the clarity of the congressional preclusion of review in FISA. In Kyne, the NLRB contended that a statutory provision that provided for judicial review

11

implied, by its silence, a preclusion of review of the contested determination. By contrast, in FISA Congress has spoken clearly and directly: "[N]o court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any [Board] notice or order under this section." 12 USC S 1818(i)(1) (1988 ed, Supp II) [12 USCS S 1818(i)(1)] (emphasis added). In this way as well, this litigation differs from Kyne.

Viewed in this way, Kyne stands for the familiar proposition that "only upon a showing of `clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review." Abbot Laboratories v. Gardner, 387 US 136, 141, 18 L Ed 2d 681, 87 S Ct 1507 (1967). As we have explained, however, in this case the statute provides us with clear and convincing evidence that Congress intended to deny the District Court jurisdiction to review and enjoin the Board's ongoing administrative proceedings.

502 U.S. at 44 (footnote omitted).

In Hindes v. F.D.I.C., 137 F.3d 148, 164 (3d Cir. 1998), we noted the "limited exception to a statute's withdrawal of jurisdiction where the plaintiff claims that the agency acted in a blatantly lawless manner or contrary to a clear statutory prohibition" and emphasized "that an integral factor in determining the applicability of the exception is the clarity of the statutory preclusion."

In Clinton County plaintiffs sued the United States Environmental Protection Agency ("EPA") to enjoin EPA from proceeding with a trial burn and incineration remedy. The district Court dismissed for lack of subject matter jurisdiction, citing statutory provisions precluding judicial review until EPA's remedial activities were completed. Rejecting plaintiffs' contention that under the Kyne doctrine violation of a clear statutory prohibition constituted an exception to the statutory bar, we stated "[s]ubsequent cases have refined the Kyne doctrine. In Briscoe v. Bell, 432 U.S. 404, 97 S.Ct. 2428, 53 L.Ed.2d 439 (1977), the Court held that jurisdiction to review agency action allegedly in excess of statutory authority cannot be inferred when language in the statute itself expressly forecloses judicial

12

review . . . . More recently, in Board of Governors v. MCorp Financial, Inc., . . . the [Supreme] Court reiterated that a right to judicial review under Kyne may be inferred only if there is no clear statutory prohibition of such review." 116 F.3d at 1028–1029.2

The language of S 8128(b) provides clear and convincing evidence that Congress intended to deny the district courts jurisdiction to review decisions of the DOL. The language is broad enough to include both policy or rule making decisions of the Secretary as well as individual benefit determinations. Paluca v. Secretary of Labor, 813 F.2d 524, 527–28 (1st Cir.), cert. denied sub nom. Roberts v. Secretary of Labor, 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987).

McDougal–Saddler seeks to distinguish MCorp, Hindes and Clinton County from the present case, arguing that (i) MCorp, the CERCLA case (Clinton County) and the FIRREA case (Hindes) each involves claims with language, history and function very different from those applicable in FECA cases and (ii) in MCorp, Hindes and Clinton County some form of relief was available in future proceedings. The principles of statutory construction set forth in those cases, however, are equally applicable here, regardless of the context. When a plaintiff seeks to rely upon the Kyne doctrine these circumstances are insufficient to overcome a clear statutory prohibition of judicial review such as S 8128(b).

_____

2. In dicta four circuits have stated S 1331 jurisdiction exists to review claims that OWCP policy violated clear statutory commands. See Staacke v. United States Secretary of Labor, 841 F.2d 278, 281–82 (9th Cir. 1988), citing Oestereich v. Selective Serv. Sys. , 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) and Leedom v. Kyne, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958) (finding no clear statutory command); Woodruff v. United States Dep't of Labor, 954 F.2d 634, 639–40 (11th Cir. 1992); (same); Brumley v. United States Dep't of Labor, 28 F.3d 746 (8th Cir. 1994), cert. denied, 513 U.S. 1082, 115 S.Ct. 734, 130 L.Ed.2d 637 (1995) (same); Hanauer v. Reich, 82 F.3d 1304, 1307–09 (4th Cir. 1996). These opinions, however, predate our Court's opinions in Hindes and Clinton County.

13

IV. Conclusion

For the foregoing reasons, we will affirm the district court's order granting the DOL's motion to dismiss the complaint.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

14